Rockford OWEN, Respondent,

v.

Robert J. SMITH, Guardian of the Estate of Faye J. Frye, Incompetent, Appellant.

No. 9711.

Missouri Court of Appeals, Springfield District.

Jan. 21, 1976.

John C. Crow, Hamra & Crow, Springfield, for appellant.

Rolland L. Comstock by Jerry D. Mee, Springfield, for respondent.

## PER CURIAM.

Plaintiff Rockford Owen ("Rockford") brought this action to impress a constructive trust on certain land ("the lot") in Springfield, Missouri. The legal title to the lot is in Faye J. Frye ("Faye"). After she obtained the title, and prior to the institution of the action, Faye was declared to be an incompetent person. Defendant is the guardian of Faye's estate. The trial court found the issues in favor of plaintiff, the decree reciting "that there is hereby impressed upon [the lot] a trust to the extent of $2,000." Defendant appeals.

The petition alleged that on January 15, 1971, Faye obtained title to the lot from a public agency; that Rockford "provided the full $2,000 consideration" which Faye paid as the purchase price; that Rockford and Faye agreed that legal title to the lot would be taken in the name of Rockford; that, contrary to the agreement, Faye took title in her name; that Rockford, after discovering Faye took the title, demanded that she transfer it to him but that she refused to do so.

Neither side invoked Rule 73.01 V.A.M.R. by requesting findings of fact or a statement of the grounds for the trial court's decision and the court made none.

At the trial, counsel for defendant objected to the giving of testimony by Rockford. The objection was based on that portion of § 491.010 V.A.M.S., "the dead man's statute," which deals with insane persons.[1] Although the objection did not receive a ruling, Rockford's counsel apparently felt it was well taken and made no offer of proof.

To establish a constructive trust, an extraordinary degree of proof is required, and vague or shadowy evidence or a preponderance of the evidence is not sufficient. *Aronson v. Spitcaufsky*, 260 S.W.2d 548, 549[1] (Mo.1953). The evidence must be so unquestionable in its character, so clear, cogent, and convincing that no reasonable doubt can be entertained as to its truth and the existence of the trust. *Thomason v. Beery*, 361 Mo. 424, 235 S.W.2d 308, 312[5] (1950). The court must be "completely and fully convinced that a trust was created." *Gardner v. Bernard*, 401 S.W.2d 415, 423[18] (Mo.1966). A higher degree of proof is necessary to establish a constructive trust than to establish fraud. *Tobin v. Wood*, 159 S.W.2d 287, 290[7] (Mo.1942); *Aronson, supra*, 260 S.W.2d 548 at p. 549. The stringency of the proof requirements has been attributed to the public policy in favor of the security of titles and the reluctance of courts to disturb record or other apparent ownership. Bogert, Law of Trusts, § 78, p. 211 (4th ed.)

"To follow money into land, and impress the land with a trust, the money must be distinctly traced, and clearly proved, to have been invested in the land. It must be clear that the lands have been paid for out of the trust money." *Phillips v. Overfield*, 100 Mo. 466, 13 S.W. 705, 706 (1890). See also *Dailey v. Dailey*, 125 Mo. 96, 28 S.W. 330, 331 (1894); *Clay v. Walker*, 6 S.W.2d 961, 964[4–6] (Mo.App.1928); Restatement

---

1. § 491.010 provides, in pertinent part ". . . [In] actions where one of the original parties to the contract or cause of action in issue and on trial is dead *or is shown to the court to be insane*, the other party to such contract or cause of action shall not be admitted to testify . . . in his own favor . . . ." (Emphasis supplied)

(Second) of Trusts § 202, p. 454, Comment o.

█ "Where a person wrongfully disposes of the property of another, the other is not entitled to priority over the general creditors of the wrongdoer merely because of the character of the wrong done to him. This is true whether or not the wrongdoer is in a fiduciary relation to the other. . . *The claimant must prove not only that the wrongdoer once had property legally or equitably belonging to him, but that he still holds the property or property which is in whole or in part its product."* (Emphasis supplied) Restatement of Restitution § 215, p. 866. See also 76 Am.Jur.2d Trusts § 252, p. 474.

█ The application of the foregoing principles to the following evidence requires reversal.

On February 18, 1966, Rockford was declared to be an incompetent person and a guardian was appointed.

On July 26, 1966 Rockford married Faye.

On May 26, 1967, Rockford and Faye were divorced. Although no longer married, they continued to live together in an apartment house owned by Faye. Until she was declared incompetent, Faye received rent from tenants.

On July 9, 1969, Rockford was restored to competency and his guardianship was removed.

On July 14, 1969, Rockford gave a receipt to his guardian, showing payment of $2,180.47 consisting of $164.64 cash, $1,000 represented by Missouri Savings & Loan Account No. 8079, and $1,015.83 represented by United Savings & Loan Account No. 4224. Rockford deposited $1,015.83 in United Account No. 4386 but thereafter, and on the same day, withdrew it and received a check in that amount from United.

On July 15, 1969, Rockford received a check in the amount of $1,000 representing Account No. 8079. The two checks, each bearing Rockford's endorsement, were endorsed by the Citizens Bank.

Also on July 15, 1969, Rockford and Faye jointly leased safety deposit box No. 5367 at the Citizens Bank. The lease provided that the bank would allow no person access to the box except the lessees or their authorized representatives, and that each of the lessees "shall have full access to and the control of the contents of the box" without further authority. Martha Shinn, an employee of Citizens Bank, was present at the leasing of the box but did not know what, if anything, was placed in the box on July 15, 1969.

On September 4, 1969, Faye visited the box.

On September 30, 1969, Faye visited the box.

On February 13, 1970, Faye visited the box.

On September 8, 1970, Faye signed a form provided by the public agency from which the lot was purchased. This form recited that Faye proposed to purchase the lot, that its value was $2,000, that it adjoined Faye's other real estate (the apartment house) and that she needed the lot for parking; that "sources and amount of cash available" to Faye included "checking" in the amount of $850.00 and "savings" in the amount of $5,000. The Citizens Bank of Springfield and two Arkansas banks were listed, though it is not clear which account was in which bank. The form also listed bonds in the amount of $1,400 as another asset of Faye which was "readily salable."

On December 10, 1970, Faye entered into a contract with the public agency for the sale of the lot to Faye for $2,000.

On January 15, 1971, at 1:42 p. m. Faye visited the box. Faye, as remitter, gave the public agency, as payee, a cashier's check drawn on Citizens Bank in the amount of $2,000. The public agency executed and delivered to Faye its "special warranty deed" to the lot. Faye was the sole grantee. The consideration was $2,000.

In March, 1972 Faye had a conversation with Rockford's sister. According to the

sister, Faye said that the reason Rockford was leaving was because he had been "bugging" Faye for his money and Faye could not pay him the money overnight. "Faye said that the property belonged to her. Rockford had spent money on the property and he wanted his money back." The witness did not know how much money Faye was talking about. It was the witness's understanding that Rockford had put up some money for the *remodeling* of the property. "The only thing I know is prior to this they had done some remodeling and they had accumulated some lots during their marriage. That's all I know."

On April 17, 1972, Rockford, accompanied by his witness Delo, visited the safety deposit box. According to Delo, Rockford opened the box and there was nothing in it.

On May 5, 1972, Faye was adjudicated an incompetent and a guardian was appointed. On an unspecified date thereafter Rockford delivered to Faye's guardian (defendant) a "stack of abstracts" and "quite a few papers" including the deed to the lot. At the time of the delivery of these items, Rockford made no statement "that this was his property or that he had any claim to it."

It seems reasonable to assume, in light of its decree, that the trial court found that Faye used $2,000 of Rockford's money in paying the public agency for the lot. This court finds that the evidence was not "so clear, cogent, unequivocal, and positive as to banish doubt" that such was the situation.

It appears that on July 14, 1969, Rockford, by cashing checks at the Citizens Bank, was in possession of over $2,000. On that date Rockford and Faye jointly leased the safety deposit box. But there was no showing that on that date, or any date, money in any amount or any other thing was placed in or taken out of the safety deposit box.

Faye visited the box on four occasions after July 14, 1969. The last such visit took place on the day she paid for the lot and received the deed. But there was no showing what, if anything, Faye put in or took out of the box on that day or on any other day. Indeed there is no showing whether Faye's visit to the box on January 15, 1971, took place before or after she obtained the $2,000 cashier's check, dated the same day, with which she paid the purchase price.

Assuming the truthfulness of witness Delo's testimony that the box was empty when Rockford opened it on April 17, 1972, Faye must have taken *something* out of the box on January 15, 1971, since obviously she left nothing in it and otherwise her visit would have been without purpose.

If it be conceded that Faye took something out of the box on that date, what was it? When was it placed in the box? Was it money? If so, how much money? Whose money? If it was money, what did Faye do with it? Did she use it to purchase or to apply on the purchase of the cashier's check dated January 15, 1971?

In short, there is no showing by the degree of proof required that Faye, with or without Rockford's consent, used $2,000 or any other amount of Rockford's money to pay all or any portion of the price of the lot.

Nor are the deficiencies in the evidence cured by the March 1972 statements attributed to Faye. Those statements, if admissible at all, are too vague and indefinite, even in light of the other evidence, to support the decree.

Although the evidence demonstrates the *possibility* that Faye wrongfully appropriated $2,000 of Rockford's money and used it to buy the lot, this court is not "completely and fully convinced." *Gardner v. Bernard, supra,* 401 S.W.2d at 423[18].

The judgment is reversed.

All of the judges concur, except STONE, J., who did not sit or participate in determination of this cause.