Marshall **HUDSON**, Plaintiff-Appellant,

v.

Brigitte **DeLONJAY**
Defendant-Respondent.

No. 51326.

Missouri Court of Appeals,
Eastern District,
Division Five.

June 23, 1987.

Thomas M. Blumenthal, Susman, Schermer, Rimmel & Parker, St. Louis, for plaintiff-appellant.

Allan H. Zerman, Michael A. Gross, St. Louis, for defendant-respondent.

SNYDER, Chief Judge.

This is an appeal by plaintiff Marshall F. Hudson from the judgment in an equitable action between an unmarried woman and man, who cohabited for several years and during the cohabitation acquired substantial assets. Hudson filed two suits in the circuit court of St. Louis County, the first praying for partition in one count and damages for false imprisonment in the other. In the second suit Hudson asked for a judgment declaring that he was entitled to money deposited in the registry of the court which had been held as an asset of Dollco, an unincorporated business. Defendant-respondent Brigitte DeLonjay counterclaimed in contract, fraud, breach of fiduciary duty, assault, intentional infliction of emotional distress and implied in fact contract.

The suits were consolidated in the circuit court, tried, and judgment rendered in favor of DeLonjay. The judgment is affirmed.

In Hudson's first point relied on he claims the trial court erred in rendering judgment for DeLonjay on an implied in fact contract between Hudson and DeLonjay, who had cohabited as an unmarried couple during the period in which the assets in question were accumulated.

Much of appellant's argument is based on the public policy of Missouri which, according to appellant, prohibits the recovery of damages from a cohabitant based on a meretricious relationship. The case under review does not present that issue, but is simply a contract question between two individuals. DeLonjay makes no claim that the sexual relationship of the parties was in any way consideration for the contract which the trial court found to exist.

Hudson raises five more points. He alleges the trial court erred in:

1. Rendering judgment based on "internally antagonistic and inconsistent facts" and an erroneous application of the law by finding (a) both an express and an implied in fact contract, and (b) a breach of a confidential relationship, and at the same time the lack of any such breach.

2. Applying the law by using a burden of proof substantially less than that required by case law.

3. Applying the case law on the contribution of each party toward acquisition of property as set forth in *Brooks v. Kunz*, 637 S.W.2d 135 (Mo.App.1982) in the judgment dividing the assets.

4. Dividing the Dollco assets because the division was against the weight of the evidence.

5. Dividing the stock of Affiliated Metals Company, a corporation, because it was beyond the scope of the pleadings.

The allegation that the judgment was against the weight of the evidence in any respect, or that it is not supported by substantial evidence, which permeates the argument portion of Hudson's brief, may be disposed of by referring to the often cited precepts prescribed in *Murphy v. Carron*, 536 S.W.2d 30, 32 [1–3] (Mo. banc 1976). This court finds the judgment was supported by substantial evidence and was not against the weight of the evidence. It was for the trial court to determine the credibility of the witnesses and in doing so it may have taken into consideration the evidence that Hudson had lied under oath in another case, or as he put it, when the court asked him for an explanation, he "stretched the truth" or was "evasive".

The facts, briefly, are these. Brigitte DeLonjay and Marshall F. Hudson began to cohabit in April, 1976, after each had been divorced from other spouses. They purchased a residence for $80,750.00, the down payment of $32,515.29 having been supplied from the proceeds of the sale of a residence owned solely by DeLonjay. The new residence was conveyed to "Marshall F. Hudson and Brigitte DeLonjay as joint tenants, and not as tenants in common, and to the survivorship," by general warranty deed. The note payments on the house were made by Hudson for ten months and from a joint checking account of the parties for the next fifty-nine months.

Throughout the parties' relationship, Hudson earned far more money than DeLonjay did. In the years '80 through '83 while the parties were both working at Affiliated, he earned a total of $170,959.62 and she earned $45,734.62. Both contributed to the considerable number of joint bank accounts they opened and closed during the years they lived together. Her contributions included in addition to her Affiliated earnings, income from sewing and child support payments from her former husband. They paid most of their household expenses from joint funds.

Hudson was employed in the steel business as a salesman when the relationship with DeLonjay began. In 1979 Hudson and DeLonjay organized a steel processing and cutting business of their own, which they incorporated under the name of Affiliated Metals Company. The corporation was financed by $17,000.00 from a joint checking account in the Gravois Bank, $9,000.00 from an untraced source, and by a $27,184.90 loan from Community Federal Savings and Loan Association, for the payment of which the parties were jointly obligated. There were other loans to the corporation for substantial amounts from 1979 to 1983. The total of these loans was $2,498,000.00. The money was lent by three different banks. The loans were repaid by the corporation, although both parties personally guaranteed payment. The parties' residence was pledged as security for at least one loan.

The company was extremely successful, the book value at the time of the trial being $1,400,000.00. In the fiscal year ended August 31, 1985, the after-tax net income of the business was $690,091.00, according to the testimony of the certified public accountant who was called as an expert witness by DeLonjay. The accountant also testified that in his opinion the business as of August 31, 1985 had a minimum value of $5,443,902.00. Both parties worked at the business but Hudson was the major force behind the success of the company.

DeLonjay was an officer and a director of Affiliated from its inception until November, 1983. Although corporate tax returns showed each party as a 50% shareholder in 1980 and 1981, they are silent as to DeLonjay in 1982 and 1983, and show Hudson as a 99% shareholder in 1984 and 1985. Of the authorized 30,000 shares of common stock, 29,495 were issued to Hudson and 5 shares were issued to "Brigitte Hudson". Various financial statements of the parties showed that they owned all of their assets jointly. Most documents of the corporation were signed by Hudson as the sole shareholder.

The parties also formed a fictitious name business called Dollco in 1981. The capital for the business came from jointly held bank accounts. Dollco purchased various pieces of equipment which were rented to Affiliated, in addition to real estate in Piedmont, Missouri, which was purchased for $102,000.00 and was used for the recreation and entertainment of Affiliated employees and customers. Title to the real estate was taken in the name of "Marshall F. Hudson d/b/a Dollco Company".

There was extensive testimony from the *parties concerning* their domestic finances, the operations of Affiliated and Dollco, and the bank accounts and assets held by the parties throughout their relationship. There was also voluminous documentary evidence.

The parties separated in June of 1984, after which Hudson filed his lawsuits.

The trial court made extensive findings of fact and conclusions of law and rendered judgment in favor of Hudson on Count I of his petition for partition of the parties' residential real property and against Hudson on Count II, his claim of false imprisonment and malicious prosecution. The court, in ruling on the other counts, rendered judgment in favor of DeLonjay based upon an implied in fact contract, breach of a confidential relationship, constructive fraud and constructive trust, and awarded DeLonjay, in addition to her equal share of the residential property, one half the stock of Affiliated, one half the value of the Dollco assets, an equal share of money deposited in the registry of the Court, certain money appropriated by Hudson, and the balance in a joint bank account. The court ruled against DeLonjay on her fraud, assault and intentional infliction of emotional distress counts.

■ In appellant's first point he argues that the trial court erred in finding an implied in fact contract to share the assets accumulated during the parties' relationship, because that finding contravenes the public policy of Missouri, which, according to appellant, prevents the enforcement of implied in fact contracts between unmarried cohabitants. The point is denied.

Appellant emphasized this point in his brief and in oral argument, but in fact, it has no validity. Although it is true that this jurisdiction no longer recognizes common law marriages, *Rone's Estate v. Rone*, 218 S.W.2d 138 (Mo.App.1949), no citation is required to support the proposition that any two parties may enter into a valid and binding contract with each other if all of the contractual elements are present. The fact that a man and a woman are living together in a meretricious relationship does not prevent them from entering into an enforceable contract with each other.

Courts in numerous other jurisdictions have held that express contracts between nonmarried cohabitants should be enforced except to the extent that such contracts are explicitly founded on the consideration of meretricious sexual services, and that in the absence of any express agreement, courts should look to the conduct of the parties to determine whether there exists an implied contract between them. *Boland v. Catalano*, 202 Conn. 333, 521 A.2d 142, 146 (1987); *Cook v. Cook*, 142 Ariz. 573, 691 P.2d 664, 668 (1984); *Kinkenon v. Hue*, 207 Neb. 698, 301 N.W.2d 77, 80 (1981); *Kozlowski v. Kozlowski*, 80 N.J. 378, 403 A.2d 902, 906 (1979); *Marvin v. Marvin*, 18 Cal.3d 660, 134 Cal.Rptr. 815, 557 P.2d 106 (1976).

Section 589 of the Restatement of the Law of Contracts (1932) supports this reasoning. It reads:

A bargain in whole or in part for or in consideration of illicit sexual intercourse or of a promise thereof is illegal; but subject to this exception such intercourse between parties to a bargain previously or subsequently formed does not invalidate it.

This court adopts the view of the Restatement and the cited cases. The relevant inquiry is whether there was an agreement, either express or implied in fact, between the parties which was supported by valid consideration. This remains the test even though the parties' contemplation of cohabitation may have been the reason for their entering into such an agreement at the outset. *Cook v. Cook,* 691 P.2d at 668–9.

Appellant relies primarily on an Illinois case, *Hewitt v. Hewitt,* 77 Ill.2d 49, 31 Ill.Dec. 827, 394 N.E.2d 1204 (1979), in which the woman brought an action against the man because he promised to share his life, his future, his earnings, and his property with her. Her claim was based in part on implied contract, evinced by the conduct of the parties in their "family relationship" of fifteen years during which three children were born to the couple.

The Illinois court dismissed the complaint on the theory that public policy and Illinois law required such a claim to be based on a valid marriage. *Id.* 31 Ill.Dec. at 832, 394 N.E.2d at 1209. The court reasoned that the real thrust of the woman's argument was that in light of changes in societal norms, the court should grant a legal status to relationships between unmarried cohabitants which would afford these relationships the same integrity as the institution of marriage, which is sanctioned and promoted by Illinois law. *Id.* at 831, 394 N.E.2d at 1208. The court rejected this argument, holding that the legislature, not the courts, was best suited to declare new public policy in the domestic relations field. *Id.* at 832, 394 N.E.2d at 1209.

In the case under review there is no danger of establishing in Missouri a legal status for a meretricious relationship between a woman and a man. Respondent DeLonjay did not ask the trial court to find an implied in fact contract to share accumulated assets based on the performance of illicit sexual services during the course of a meretricious relationship. On the contrary, DeLonjay argued that she and appellant Hudson had an express agreement to pool resources and share assets accumulated during their relationship. DeLonjay argued alternatively that the court could find an implied in fact contract from the parties' non-sexual conduct during their relationship.

Even the *Hewitt* decision, upon which appellant relies, contains language which would permit the enforcement of contracts between unmarried cohabitants on independent matters. The court said:

It is true, of course, that cohabitation by the parties may not prevent them from forming valid contracts about independent matters for which ... sexual relations do not form part of the consideration.

*Id.,* 31 Ill.Dec. at 831, 394 N.E.2d at 1208.

In light of the evidence, including testimony about the parties' agreements and accounts of their conduct, the trial court properly could have found that the parties formed a contract to share assets accumulated during their relationship and that the contract was supported by valid consideration.

No claim was made by either party that sex provided the consideration for any part of the contract. In fact there was no direct evidence in the record that there even existed a sexual relationship between DeLonjay and Hudson. The trial court did not in its findings draw any inference that sexual relations were a part of the consideration and probably could not have done so. Hudson's first point is denied.

Appellant's second point relates to alleged inconsistencies in the trial court's rulings. He maintains that it was an error of law to find both an express contract and an implied in fact contract arising out of the same facts, and also to find a breach of a confidential relationship creating a constructive fraud, while at the same time

finding a lack of any such breach. Appellant also claims that these findings are not supported by substantial evidence.

Although from appellant's brief it is difficult to define specifically the exact nature of the complained of error, appellant seems to rely most heavily on an alleged inconsistency between a finding of both an express and an implied in fact contract. In the trial court's conclusions of law the court recognized "the existence of an express agreement between the parties to establish Affiliated Metals Company as a joint enterprise and to share equally in the fruits of their endeavor." The trial court's judgment, however, was entered in favor of DeLonjay and against Hudson on DeLonjay's sixth counterclaim in one cause, a counterclaim based on an implied in fact contract. In the judgment the court also ruled that it was unnecessary to decide the express contract count because of its ruling that there was an enforceable implied contract. Therefore, there is no inconsistency within the judgment itself with respect to this issue,

Hudson argues that the trial court's judgment for DeLonjay upon her counterclaim alleging an implied in fact contract is invalidated by the court's finding of fact that the parties entered into an express agreement concerning the same subject matter. In support of this argument, appellant cites the case of *Wenzel v. Wenzel,* 283 S.W.2d 882, 887 (Mo.App.1955) in which the court states that a judgment cannot stand when it is based upon findings of fact of record which are antagonistic, inconsistent or contradictory to it.

The case under review does not present such a situation. The finding of both an express and implied contract is not inconsistent where, as here, the terms of the implied agreement do not materially alter or differ from the express agreement.

Appellant cites *Krupnick and Associates, Inc. v. Hellmich,* 378 S.W.2d 562, 569–70 (Mo.1964) for the proposition that an express agreement between two parties precludes an action between them for recovery on the basis of an implied contract. But a careful reading of *Krupnick* discloses that recovery on the basis of an implied in fact contract will only be precluded by the existence of an express contract where the recognition of an implied contract would alter the terms of the express agreement. No danger of any such alteration is presented by the facts in the case under review.

Moreover, because agreements of the nature present here are most often not set out in detail, courts have recognized that the characterization of such agreements as express or implied is of no legal significance because reference to the parties' actions is usually necessary in order to ascertain the terms of the agreement. *Boland v. Catalano,* 202 Conn. 333, 521 A.2d 142, 144 (1987); *Cook v. Cook,* 152 Ariz. 573, 691 P.2d 664, 667 (1984); *Kozlowski v. Kozlowski,* 80 N.J. 378, 403 A.2d 902, 906 (1979).

In a court tried case, the trial judge can rule based on the evidence adduced. The express contract which was found to exist by the trial court did not vary from the implied in fact contract upon which the court based its judgment. Under the unique facts in this court tried case it was not inconsistent for the trial court to base its final judgment on an implied in fact contract and also to find in its conclusions of law that there existed an express contract.

In a case tried to a jury the election of a single theory might be necessary before submitting the case to the jury for decision. This is not a concern here. In a case tried to the court the trial judge is presumed qualified to evaluate the evidence and fashion an appropriate equitable remedy when necessary. *Cf. Pike v. Pike,* 609 S.W.2d 397, 403 (Mo. banc 1980) (trial court presumed not to give weight to incompetent evidence).

In this court tried case the judgment of the trial court must be affirmed if it can be supported on any reasonable ground or theory. *Ludwig v. Ludwig,* 693 S.W.2d 816, 819 (Mo.App.1985). Because there is ample evidence to support the trial court's judgment on an implied in fact contract theory, and because the court's findings and con-

clusions recognizing the existence of an express contract are not fatally inconsistent with the judgment, appellant's point alleging error on this issue is denied.

■ Hudson, in the same point, also alleges that there exists a fatal inconsistency between the trial court's finding that appellant did not breach the confidential relationship between the parties when he took control of approximately $46,000 of DeLonjay's Affiliated earnings which was placed in joint accounts and used it for their common benefit, and the court's finding that Hudson did in fact breach the parties' confidential relationship through his wrongful assumption of ownership and control of the Affiliated and Dollco companies. Hudson contends that these findings are inconsistent because implicit in them is the determination that appellant has breached a duty with regard to the same funds which the court found to have been applied to the common benefit of the parties without breaching a duty.

This argument is based on the court's finding that all of the parties' assets acquired during their relationship, which would necessarily include any interest in Affiliated and Dollco, were acquired through funds contained in joint checking and savings accounts. Appellant reasons that as these funds are finite, they necessarily comprise the same funds previously determined by the court to have been applied to the common benefit of the parties, i.e. the earnings of DeLonjay at Affiliated. In fact, DeLonjay also contributed additional funds to the joint accounts from money she earned from sewing and from child support payments she received from her former husband.

In addition, there is evidence to support the theory that the breach of the confidential relationship occurred, not at the time when appellant Hudson took control of DeLonjay's funds and used them to build the companies, but rather when he wrongfully issued the stock in his own name to the virtual exclusion of respondent.

It should be obvious that in the situation where Hudson took control of the Affiliated stock, his actions were inimical to the interests of DeLonjay and were thus in breach of the parties' confidential relationship. In the other situation where he used DeLonjay's income from Affiliated for the common benefit, Hudson's actions were consistent with the interests of DeLonjay. It was therefore not inconsistent to hold that there was a breach of a confidential relationship in one case and that no breach occurred in the other. This interpretation is reasonable and sufficient to support the court's judgment.

■ Appellant further argues that the trial court erred in imposing a constructive trust where no actual fraudulent representation was found. When, as here, there exists a fiduciary or confidential relationship between the parties which has been breached, the trial court need not find an actual fraudulent representation as appellant urges is necessary, in order to properly find constructive fraud and impose a constructive trust. *Thompson v. Williams*, 671 S.W.2d 442, (Mo.App.1984).

■ In appellant's final argument of his second point relied on, he seems to allege a fatal inconsistency between what he claims are the court's conclusions of law that the parties entered into an express contract to share everything, and its conclusion that appellant Hudson fraudulently induced respondent to enter into the contract. Appellant claims that these conclusions are inconsistent relying on *Yost v. Seigfreid*, 234 S.W.2d 231, 233–4, (Mo.App.1950) for the proposition that an election to follow the fraudulent inducement theory voids any contract from its inception.

The trial court never concluded that Hudson fraudulently induced respondent to enter into a contract, but instead found that appellant had practiced a constructive fraud upon respondent by breaching their confidential relationship. As a decision based upon the theory of constructive fraud does not void a contract from its inception, the court's conclusions with regard to the existence of the express and implied contracts are not as appellant alleges, inconsistent with the court's finding of constructive fraud. *See Sauer v. Hicks,*

662 S.W.2d 310 (Mo.App.1983). The appellant's second point is denied.

In appellant's third point he claims that the trial court erred in its application of law by imposing a constructive trust in favor of respondent using a burden of proof which is substantially lower than that required by law. Appellant argues that the appropriate standard is articulated in *Owen v. Smith*, 532 S.W.2d 538, 539 (Mo. App.1976). The court in *Owen* held that an extraordinary degree of proof is required to establish a constructive trust, and that the evidence must be so convincing that no reasonable doubt can be entertained as to its truth and the existence of the trust. *Id.*

In the case now under review the record is replete with evidence establishing the existence of a confidential relationship between the parties, an agreement between them to share equally in property accumulated during their relationship, and a breach of their agreement which constituted a breach of their relationship. The respondent DeLonjay has adduced sufficient evidence at trial to satisfy her burden of proof under *Owen*. The courts imposition of a constructive trust in the case under review was therefore not improper.

In his fourth point Hudson asserts that the trial court erroneously applied the law set forth in *Brooks v. Kunz*, 637 S.W.2d 135 (Mo.App.1982) by failing to consider, in its division of property, the proportionate contributions of each of the parties toward acquisition of their assets. The point is denied.

This court's holding in *Brooks* is inapplicable to the factual situation presented here. *Brooks* stands for the proposition that assumption of debt should be considered in addition to cash contributions in determining the proportionate interests of cotenants in the partition of jointly held real property. In *Brooks*, there was no agreement between the parties to share accumulated assets equally as there is in the case at bar. Where such an agreement exists it is controlling.

It is true, as appellant argues, that the trial court in its conclusions of law, considered the fact that the assets in question were originally acquired with joint funds and designated as joint assets on personal financial statements prepared for lender banks, and on various personal and corporate tax returns. These conclusions, however, support the court's ultimate judgment based upon its finding of an implied in fact contract. The trial court's conclusions with regard to the effect of applying *Brooks* in the instant case were expressly set forth as alternative conclusions only.

Moreover, as the trial court's judgment must be upheld if it can be supported on any reasonable ground or theory, the judgment must be affirmed if the correct result was reached, even if it was based on an incorrect theory. *Ludwig v. Ludwig*, 693 S.W.2d 816, 819 (Mo.App.1985); *McDermott v. Burpo*, 663 S.W.2d 256, 263 (Mo. App.1983). The trial court here had sufficient evidence before it to support its judgment that there was an implied in fact contract. The correctness of the court's conclusions with respect to the applicability of *Brooks* is of no consequence. The point is denied.

In point five Hudson charges that the trial court erred when it divided the assets of Dollco equally between the parties because such a division was against the weight of the evidence as reflected in the fictitious name registration. It was not against the weight of the evidence to order an equal division of the Dollco assets. *Murphy v. Carron*, 536 S.W.2d 30, 32 [1–3] (Mo. banc 1976). Appellants fifth point is denied.

In Hudson's final point he contends that it was error to impose a constructive trust upon the stock of Affiliated in the judgment on one of the consolidated cases because the issue of the company's ownership was beyond the scope of the pleadings in that cause.

In response to this point it is sufficient to say that, although the pleadings in one of the actions consolidated in the trial court did not mention Affiliated, the pleadings in the other consolidated action did. The effect of the consolidation order is to combine

several civil actions into one civil action. Rule 66.01(a). The judgment was therefore not beyond the scope of the pleadings.

The judgment is affirmed.

CARL R. GAERTNER, J., and SIMEONE, Senior Judge, concur.