**Marie MATLOCK, Plaintiff–Appellant,**

v.

**Joe C. MATLOCK and Christi L. Matlock, Defendants–Respondents.**

**No. 17089.**

Missouri Court of Appeals,
Southern District,
Division Two.

Aug. 28, 1991.

### ORDER

Robert M. Sweere, Springfield, for plaintiff-appellant.

Gary L. Smith, Lebanon, for defendants-respondents.

PARRISH, Presiding Judge.

Marie Matlock (Marie)[1] brought an action by which she sought a declaration that certain real estate was subject to a resulting trust or a constructive trust for her benefit. The record owners of the interest in the real estate that appellant contends should be declared as being held subject to a resulting trust or a constructive trust are Joe C. Matlock (Joe) and Christi L. Matlock (Christi), Marie's son and daughter-in-law. The trial court entered judgment in favor of Joe and Christi, thereby denying the requested relief. This court affirms.

Marie had lived in Springfield, Missouri. She owned a residence there. Over a period of years, she underwent a number of surgeries. She had experienced hip surgery, two hip replacements, a knee replacement, a shoulder replacement, and back surgery. On August 15, 1988, Marie was released from a hospital following back surgery. She used a wheel chair or walker for mobility. A close friend and neighbor, Lillian Hoge, assisted her. Lillian would take out Marie's trash. Lillian ran errands for Marie, "grocerys [sic], lots of little things."

Following Marie's discharge from the hospital, Lillian visited her frequently.

---

1. The three parties to this action have the same surname, Matlock. In order to avoid confusion as to their respective identities, each will be referred to by his or her given name.

Marie testified, "After I came home from the hospital she was there four or five times a day." Lillian died suddenly a few weeks later.

After Lillian's death, Marie discussed buying a house in Lebanon where she could live with Joe and Christi. Marie testified, "I told him that I couldn't go look at a house. I would have to depend on him to trust him to get what would be desirable or the right place for us to live." She told Joe that she could not buy another place until she sold her house in Springfield.

Joe contacted a real estate broker in Lebanon. He was shown property there. Joe took pictures of the house on the Lebanon property and showed the pictures to Marie. Shortly after Marie sold her house in Springfield, she, Joe and Christi signed a contract to purchase the property in Lebanon. The property was conveyed to them by warranty deed that named the three of them grantees, as follows:

> Marie Matlock, a single person; and Joe C. Matlock and Christi L. Matlock, husband and wife—the three grantees taking title as joint tenants with rights of survivorship, and not as tenants in common.

After purchasing the Lebanon property, Marie, Joe and Christi moved into the house that was located there. Christi assisted Marie by getting her medicine, buying groceries, cleaning the house, cleaning Marie's room, and doing Marie's laundry. Marie nevertheless did what she could, "[s]he wanted to stay as busy as possible." Marie paid for some food and washed a few things of her own—"[w]hatever she could she did."

After living with her son and daughter-in-law for eight months, Marie moved to a retirement home where she rented an apartment. Three months later, she moved to another apartment at another retirement home. Prior to moving from the Lebanon residence she had shared with Joe and Christi, Marie had told them that the house should have been in her name, that she was

the one who bought the house. Marie had consulted a lawyer and had a quitclaim deed prepared for Joe and Christi to sign to convey Joe and Christi's interest in the Lebanon property to her. Marie showed the deed to Joe and Christi and requested that they "take it before a notary and sign it." Joe and Christi took no action to sign the deed.[2] Shortly thereafter, Marie brought this action.

Joe and Christi testified that Marie had told them she wanted their names on the deed. The realtor who sold the Lebanon property to Marie, Joe and Christi testified that Marie was present at the closing of the real estate transaction, together with Joe and Christi. He stated, "We went over the warranty deed from the top and then the description of the property." The real estate broker was asked the following questions and gave the following answers:

Q. Did you have a conversation specifically about the property being in all three names?

A. We went over—again we went over the names to see if the correct spellings and that they were all there.

Q. Did she voice any objection to it at all?

A. Not that I remember.

Q. If she had voiced an objection would you have done something about it?

A. Right. You wouldn't have received the money for the property if it wasn't correct at that time.

Marie provided the entire amount of the purchase price for the Lebanon property—$59,000. At the time of the purchase, Marie was 78 years old. She was 79 at the time of trial. She was literate, had bought and sold real estate in the past, and took care of her own business affairs. She was accustomed to taking care of her own insurance needs. When she anticipated being hospitalized, she had always made her own preparations for going into the hospital.

**2.** Marie testified, "It went on until the first of the year and I gave them three weeks and when I decided that they wasn't going to, just didn't want to talk about it so I sent it back to you [her attorney] and asked you what we had to do and you told me what I had to do."

■ This court's review is undertaken on the following basis: the judgment of the trial court must be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence or it erroneously declares or applies the law. *Crane v. Centerre Bank of Columbia*, 691 S.W.2d 423, 425 (Mo.App.1985); *Dallas v. Dallas*, 670 S.W.2d 535, 538 (Mo.App.1984). Due deference is given to the trial court's opportunity to have viewed and assessed the credibility of the witnesses. Rule 73.-01(c)(2); *Crane v. Centerre Bank of Columbia, supra; Dallas v. Dallas, supra,* at 539.

■ Appellant's first point on appeal asserts that the trial court erred in entering judgment in favor of defendants (Joe and Christi) for the reason that "the greater weight of the evidence supported the imposition of a resulting trust in favor of the plaintiff [Marie]." Appellant points to a number of factors as supporting her first point on appeal. She provided all of the funds used to purchase the Lebanon property. At trial Marie denied any "donative intent." She points to the fact that she paid taxes on the Lebanon property and provided money for improvements. She also points to the fact that she paid for household expenses and claims she "acted promptly in challenging the transaction." She denied that the conveyance of an interest in the real estate to Joe and Christi was in return for their agreement to provide care for her.

■ Marie is the party who seeks the establishment of a resulting trust. As such, she bears "the burden to show its existence 'by clear and convincing evidence to exclude all doubt from the mind of the court.'" *Duncan v. Rayfield*, 698 S.W.2d 876, 879 (Mo.App.1985), *quoting Ham v. Ham*, 691 S.W.2d 944, 945 (Mo.App.1985). To establish a resulting trust "an extraordinary degree of proof is required.... vague or shadowy evidence or a preponderance of the evidence is not sufficient." *Pizzo v. Pizzo*, 365 Mo.

1224, 295 S.W.2d 377, 385[10] (banc 1956). *Id.*

And, again quoting from *Duncan v. Rayfield, supra:*

A resulting trust "is created by operation of law from the facts of the transaction and not from an agreement, from what the parties do and never from what they agree to do." *Wenzelburger v. Wenzelburger*, 296 S.W.2d 163, 166[5] (Mo.App.1956). A resulting trust must arise, if at all, at the instant the deed is taken. "Unless the transaction is such that the moment the title passes the trust results from the transaction itself, then no trust results. It cannot be created by subsequent occurrences." *Pizzo v. Pizzo*, supra, 295 S.W.2d at 385[9].

Further, in reviewing the evidence that was presented to the trial court, there having been no request for specific findings by the trial court nor any specific findings made, all fact issues are deemed as having been found in accordance with the result reached. Rule 73.01(a)(2); *Beck v. Beck*, 728 S.W.2d 703, 704 (Mo.App.1987).

The fact that Marie paid the full purchase price for the Lebanon property is sufficient to raise an inference that Marie did not intend that Joe and Christi should have the beneficial interest in the property. Such an inference may be overcome, however, by evidence that Marie did in fact intend that Joe and Christi have the beneficial interest. *Williams v. Ellis*, 323 S.W.2d 238, 240 (Mo.1959); *see also* Fratcher, Scott on Trusts § 441 (4th ed. 1989).

Joe testified that Marie told him several times that "[s]he wanted her name on it, [his] name on it and Chris's name on it because the survivorship." He testified that Marie did not want the property to go through probate at her death and wanted to make sure that he and Christi had a home and that he had a place to work—he was a self-employed sign painter who worked out of his home. The trial court heard the testimony of the real estate broker that the warranty deed was reviewed with Marie at the closing of the real estate transaction. This included going over the

names to see if the spelling was correct. The trial court, sitting as the trier of fact, was entitled to believe all, part or none of the testimony of any witness. *Trenton Trust Co. v. Western Sur. Co.,* 599 S.W.2d 481, 483 (Mo. banc 1980). The trial court obviously believed the testimony of those witnesses and disbelieved Marie's testimony that she told Joe that title to the property had to be taken in her name. The weight of the evidence that Marie paid taxes on the Lebanon property and paid some of her own household expenses was a matter for assessment by the trial court as was the fact that eight months after the real estate transaction was closed, Marie consulted an attorney in an effort to acquire title to the property solely in her name. The critical time with respect to whether a resulting trust existed was the instant the deed was delivered. The trial court had sufficient evidence from which it could find that there was no resulting trust. Marie's claim that the finding was against the greater weight of the evidence is denied.

■ Marie's remaining two points are directed to the trial court's failure to impose a constructive trust. A constructive trust differs from a resulting trust.

A resulting trust arises where property is transferred under circumstances that raise an inference that the person who makes the transfer or causes it to be made did not intend the transferee to take the beneficial interest in the property. On the other hand, a constructive trust is imposed where a person who holds title to property is under a duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it. A constructive trust arises without regard to the intention of the parties.

Fratcher, Scott on Trusts § 440.1 (4th ed. 1989).

Appellant's second point on appeal asserts that the trial court erred in entering judgment in favor of defendants (Joe and Christi) for the reason that "the great[er] weight of the evidence supported the imposition of a constructive trust in favor of the plaintiff [Marie]."

A constructive trust is the method or formula used by a court of equity as a means of effecting restitution or of rectifying a situation where, as the result of the violation of confidence or faith reposed in another, the plaintiff who seeks the aid of equity, has been wrongfully deprived of or has lost some title. *Sassenrath v. Sassenrath,* 750 S.W.2d 95, 98 (Mo.App.1988). Constructive trusts are based upon an actual or constructive fraud. *Iota Management Corp. v. Boulevard Investment Co.,* 731 S.W.2d 399, 414 (Mo.App.1987). To establish an implied or constructive trust, an extraordinary degree of proof is required. The evidence must be so clear, cogent, unequivocal and positive as to banish doubt and so convincing that no reasonable doubt can be entertained of its truth. *McFarland v. Braddy,* 560 S.W.2d 259, 263 (Mo.App.1977).

*Neal v. Sparks,* 773 S.W.2d 481, 486 (Mo. App.1989).

■ As the person seeking the establishment of a constructive trust, Marie is required to prove by clear, cogent and convincing evidence that a basis for its establishment exists. *Gibson v. Gibson,* 534 S.W.2d 100, 104 (Mo.App.1976). Considering the trial court's opportunity to have viewed the witnesses who testified and giving due regard to its ability to assess their credibility, this court finds no abuse of discretion by the trial court in determining that Marie's evidence did not satisfy that burden of proof.

Marie contends that her relationship with Joe, her son, was one of a confidential nature. She argues that if there was an agreement for Joe and Christi to provide for her care in exchange for the two of them acquiring an interest in the Lebanon property, the "greater weight of the evidence" established that she was susceptible to undue influence when the contract was made. She argues that she did not receive "substantial consideration." She concludes that "imposition of a constructive trust was justified."

■ "[A] confidential relationship is synonymous with a fiduciary relationship, and extends to instances in which a special confidence is reposed on one side and there is resulting *domination and influence* on the other." *Gibson v. Gibson, supra.* The sharing of blood ties or the existence of a family relationship does not, alone, establish a fiduciary or confidential relationship. *Beach v. Beach,* 207 S.W.2d 481, 486 (Mo. 1947). There is no list of specific factors that must be found in order to determine that a fiduciary relationship existed. *Chmieleski v. City Products Corp.,* 660 S.W.2d 275, 293 (Mo.App.1983). There are, however, basic elements that exist in a fiduciary relationship between two persons. In *Chmieleski,* the court summarized those elements:

(1) as between the parties, one must be subservient to the dominant mind and will of the other as a result of age, state of health, illiteracy, mental disability, or ignorance; (2) things of value such as land, monies, a business, or other things of value which are the property of the subservient person must be possessed or managed by the dominant party; (3) there must be a surrender of independence by the subservient party to the dominant party; (4) there must be an automatic or habitual manipulation of the actions of the subservient party by the dominant party; and (5) there must be a showing that the subservient party places a trust and confidence in the dominant party.

*Id.* at 294.

There was testimony before the trial court, including that of Marie, that Marie took care of her own business affairs, notwithstanding that she was 78 years old when the Lebanon property was purchased. Marie is literate, suffers no mental disability, and is of average intelligence. Although Marie relied upon Joe to look for property for her to purchase, she was not subservient to him. He provided her with pictures of the property and described it to her. Marie was present at the closing of the real estate transaction and personally reviewed the closing documents including the warranty deed that included Joe, Christi and Marie as grantees. After the real estate was purchased, it was under the control of the three of them. They all lived at that property until Marie chose to move to an apartment in a retirement home. Marie remained independent. She sought advice from her attorney and directed his actions on her behalf. The evidence does not reflect any automatic or habitual manipulation of Marie by Joe or Christi. The evidence fails to show that Marie placed any extraordinary trust and confidence in either of them. She sought and received assistance from Joe in routine activities. She did not rely on his judgment to circumvent her own.

Consistent with its findings for Joe and Christi (defendants before the trial court), the evidence is sufficient to have permitted the trial court to find that Marie intended to make a gift to Joe and Christi of the interest in the Lebanon property that was conveyed to them,[3] or to find that Marie caused the interest in the real estate to be conveyed to Joe and Christi in exchange for their agreement to provide care for her but later chose to make other living arrangements. The trial court did not abuse its discretion in failing to declare the existence of a constructive trust. This court finds no error. Appellant's second point is denied.

For her third point on appeal, appellant claims that the trial court misapplied the law in not finding the existence of a constructive trust. She again asserts that a confidential relationship existed. She also contends "that a constructive trust may be imposed solely to avoid unjust enrichment."

The issue of the existence of a confidential relationship was previously addressed. There was no showing that a confidential relationship existed. The trial court did not err in failing to so find.

**3.** *See* Annotation, *Unexplained Gratuitous Transfer of Property From One Relative to Another as Raising Presumption of Gift,* 94 A.L.R.3d 608 § 3 (1979). *See also,* general discussion in *Dixon v. Bradsher,* 779 S.W.2d 727, 732 (Mo.App.1989); and *Jones v. Jones,* 201 S.W. 557, 557–58 (Mo.App.1918).

Marie contends that "unjust enrichment" alone is sufficient for finding the existence of a constructive trust. She contends that it is appropriate to find a constructive trust without finding that there was actual or constructive fraud or a breach of a confidential relationship. She cites three cases for this proposition: *State Automobile & Casualty Underwriters v. Johnson,* 766 S.W.2d 113, 124 (Mo.App.1989); *Estate of Gulat,* 748 S.W.2d 79, 81–82 (Mo.App.1988); and *Stratton v. Stratton,* 694 S.W.2d 510 (Mo.App.1985).

In *Gulat,* one person took possession of the property of another due to a relationship between the two and, subsequent to the death of the owner of the property, refused to relinquish the property to the decedent's estate thereby enriching herself to the detriment of the devisees. In *Stratton,* real estate was conveyed to a husband and wife contrary to a prior marital agreement and contrary to what the husband (to whom the property had been intended to be conveyed) intended. After the husband died, a constructive trust was found to exist in favor of the husband's son.

In *Gulat* and *Stratton,* persons held possession of property (or, in *Stratton,* title to an interest in property) that was not intended to become theirs. In this case, there was sufficient evidence for the trial court to have found that Marie intended Joe and Christi to receive the interest in the Lebanon property that was conveyed to them. This case is distinguishable from *Gulat* and *Stratton.*

In *State Automobile & Casualty Underwriters,* proceeds from an insurance policy payable because of a fire loss were paid to two of three partners. This court found that the two partners who received the insurance proceeds held them in a constructive trust for all three partners, that a breach of a fiduciary relationship between partners is constructive fraud. *Id.* at 124–25. *State Automobile & Casualty Underwriters* is not applicable. It does not stand for the proposition for which it was cited. Rather, it is based upon a determination of constructive fraud.

Finding no misapplication of law by the trial court, Marie's third point on appeal is denied. The judgment of the trial court is affirmed.

FLANIGAN, C.J., and SHRUM, J., concur.