John RACKLEY, Plaintiff–Respondent,

v.

David RACKLEY and Jeri Rackley, his wife, and Rhonda Middleton and Garland Middleton, her husband, Defendants–Appellants.

No. 19840.

Missouri Court of Appeals, Southern District, Division One.

April 30, 1996.

Harvey S. Allen, Thayer, for appellants.

R. David Ray, Christena E. Silvey, Ray & Garrett, West Plains, for respondent.

## PER CURIAM.

Appellant Rhonda Middleton (daughter of Respondent John Rackley, hereinafter referred to as Rhonda) and her husband, Garland Middleton, appeal from an Amended Judgment of the Circuit Court of Oregon County, Missouri, imposing a constructive trust on a home and parcel of land located at Alton, Missouri, for the benefit of Respondent John Rackley (Father).[1]

Appellant David Rackley (son of Respondent John Rackley, hereinafter referred to as David) appeals from the same Amended Judgment wherein Father was awarded the amount of $5,516.55 on his claim based on quantum meruit for having provided materials and improvements on a cabin situated on property belonging to David and his wife, Jeri Rackley.

Father transferred the Alton home and parcel of land (home) to Rhonda by delivering a general warranty deed to her at her residence in Arizona in February 1988. No consideration was paid in exchange for the conveyance. Father testified that Rhonda and her husband had encountered financial difficulties and Father agreed to convey the home to Rhonda to serve as collateral for a loan and enable Rhonda to purchase a home in Oregon County, Missouri. He further testified that he and Rhonda agreed that she would reconvey the property to father when it ceased being used as collateral. Rhonda disputes Father's testimony and testified that the home was conveyed as a gift to be used by Rhonda as she needed. She denied that there was ever any discussion regarding transferring the property back to Father.

It is undisputed that the home was never used by Rhonda as collateral. The evidence further showed that Father, prior to conveying the deed to the home to Rhonda, had the deed prepared at Norman Abstract Office in Thayer, Missouri, and paid for its preparation; he then recorded the deed on February 1, 1988 and paid the recording fee. Later, Father had an auction sale in July of 1989 in preparation for a move to Florida where he owned a place. The evidence also shows that Father denied any mental disabilities and had always handled his own personal finances and financial affairs. Through the years he had bought and sold real estate and had been involved in approximately 15 real estate transactions where he handled transactions by negotiating the terms and then seeking legal advice concerning abstracts and other aspects of the transactions. The only prior business dealings that Father had with Rhonda was when Father loaned Rhonda $1,000.00 when she moved to Arizona. Rhon-

---

1. The trial court in its Amended Judgment refused to impose a constructive trust or resulting trust over two "river lots" located in Oregon County, Missouri, that had been deeded by John Rackley (Father) to David Rackley (David) and his wife. The court ruled that Father and David had no business or financial dealings prior to the conveyance of the lots and that there was "no testimony or proof ... that [David] was ever in a relation with [Father] which would result in a constructive or resulting trust in favor of [Father]." The court then concluded by stating that "[T]here is no indication that [Father's] relationship with [David] was anything more than a normal father-son relationship at the time this tract was deeded...." Respondent Father does not appeal the Amended Judgment.

da's husband testified that it was paid back to Father. There was evidence that the Father continued for a period of time to pay the taxes on the home and that in March of 1989 Rhonda transferred the home to David so that he could use it as collateral for the purchase of two river lots and the home was subsequently deeded back to Rhonda on June 11, 1992. Rhonda is one of Father's six children.

"[T]he judgment of the trial court must be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence or it erroneously declares or applies the law. Due deference is given to the trial court's opportunity to have viewed and assessed the credibility of witnesses." Rule 73.01(c)(2); *Matlock v. Matlock*, 815 S.W.2d 110, 113 (Mo.App.1991) (citations omitted).

 "To establish a constructive trust, an extraordinary degree of proof is required. The evidence must be unquestionable in character. The evidence must be so clear, cogent, and convincing as to exclude every reasonable doubt in the mind of the trial court." *Fix v. Fix*, 847 S.W.2d 762, 765 (Mo. banc 1993). "The stringency of the proof requirements has been attributed to the public policy in favor of the security of titles and the reluctance of courts to disturb record or other apparent ownership." *Owen v. Smith*, 532 S.W.2d 538, 539 (Mo.App.1976). "Either actual or constructive fraud is sufficient to support imposition of a constructive trust." *Fix*, 847 S.W.2d at 765. "Courts have equated constructive fraud with the breach or violation of a fiduciary, or confidential, relationship." *Id.* "A confidential, or fiduciary, relationship is not proven merely by a showing that the persons have ties of blood or family." *Id.* But, family and blood ties are factors to be considered in determining whether such a relationship exists. *Harlan v. Bishoff*, 649 S.W.2d 230, 233 (Mo.App. 1983). Yet, a higher degree of proof is necessary to establish a constructive trust than to establish fraud. *Aronson v. Spitcaufsky*, 260 S.W.2d 548, 549 (Mo.1953). Thus, this Court in *Beck v. Beck*, 728 S.W.2d 703 (Mo. App.1987) reversed the trial court when it imposed a constructive trust where the mother was suffering from a broken arm and a prior nervous condition and was unable to take care of herself for nine months, necessitating her living with her son. The son had a deed and power of attorney prepared at his expense by an attorney the mother had never met. In that case there was no evidence that mother had either prior to or contemporaneously with the execution of the deed, entrusted any aspect of her financial affairs to her son, or that she ever relied on him in any way for financial guidance. The Court reasoned that there was no evidence establishing any ground on which a constructive trust could be impressed.

A constructive trust differs from a resulting trust in that a "resulting trust arises where property is transferred under circumstances that raise an inference that the person who makes the transfer or causes it to be made did not intend the transferee to take the beneficial interest in the property." *Matlock*, 815 S.W.2d at 114. "[A] constructive trust is imposed where a person who holds title to property is under a duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." *Id.* To establish either an implied trust or a constructive trust "an extraordinary degree of proof is required. The evidence must be so clear, cogent, unequivocal and positive as to banish doubts ... [and] so convincing that no reasonable doubt can be entertained of its truth." *McFarland v. Braddy*, 560 S.W.2d 259, 263 (Mo.App.1977).

 The rules applicable to this case are stated in the RESTATEMENT, RESTITUTION § 182, (1936), as follows:

Where the owner of an interest in land transfers it inter vivos to another upon an oral trust in favor of the transferor or upon an oral agreement to reconvey the land to the transferor, and the trust or agreement is unenforceable because of the Statute of Frauds, and the transferee refuses to perform the trust or agreement, he holds the interest upon a constructive trust for the transferor, if

(a) the transfer was procured by fraud, misrepresentation, duress, undue influence

or mistake of such a character that the transferor is entitled to restitution, or

 (b) the transferee at the time of the transfer was in a confidential relation to the transferor, or

 (c) the transfer was made as security for an indebtedness of the transferor.

The Comment goes on to state:

Where a transfer of property is made without consideration the inference is that the transferor intends to make a gift to the transferee, not that he intends that the transferee should hold the property for the benefit of the transferor. This Section deals with the situation which arises where evidence is offered of an oral agreement by the transferee to hold the property upon an oral trust in favor of the transferor or upon an oral agreement to reconvey it to him.

RESTATEMENT OF RESTITUTION § 182 cmt. a (1936).

In review of the evidence herein, provision (a) does not apply because there is absolutely no proof that the transfer was procured by fraud, misrepresentation, duress, undue influence or mistake. The Father prepared and conveyed to Rhonda an unrestricted and unconditional deed and personally delivered it to her in Arizona.

No independent proof exists as required by (b) to show that there was a confidential relationship existing between Father and Rhonda. "A confidential relationship is generally synonymous with a fiduciary relationship." *Crane v. Centerre Bank,* 691 S.W.2d 423, 428 (Mo.App.1985). There is no clear, cogent and convincing evidence to suggest that a fiduciary relationship was in existence, other than a $1,000.00 loan that had previously been made and repaid to Father by Rhonda. Financial assistance from a parent to a child does not create a confidential relationship. *See Rutledge v. Rutledge,* 655 S.W.2d 812, 814 (Mo.App.1983).

Subsection (c) does not apply since the transfer was not made as a security for an indebtedness made by the Father, the transferor.

The fact that the Rhonda was only one of six children does not direct the imposition of a constructive trust. The strongest evidence in support of Father's contention is the fact that Rhonda subsequently conveyed the home to David for purposes of David's use as collateral and that the property was, in turn, reconveyed back to Rhonda. But "vague or shadowy evidence or a preponderance of the evidence is not sufficient." *Matlock,* 815 S.W.2d at 113. Absent clear, cogent and convincing evidence to substantiate the imposition of a constructive or resulting trust, leaving little room for doubt, it is the finding of this Court that the trial court erred in imposing a constructive trust on the home. "The plaintiff simply failed to produce the clear, cogent and convincing evidence essential for the proof of a constructive trust." *Etheridge v. Hammer,* 450 S.W.2d 207, 211 (Mo.1970). Appellants Rhonda Middleton and Garland Middleton's point on appeal is well-taken.

■ In review of that part of the judgment awarding a judgment to Father in quantum meruit, the evidence shows that while David and his wife were visiting in Florida with Father, the latter brought up the idea of building a cabin on David's river lot. David testified that he informed Father that he could not afford to build a cabin on the lot and that he told Father not to do any work on the cabin but Father did it anyway. Father then tore down one of the cabins and used the foundation and part of the floor on the cabin in question; he then tore down David's old existing cabin and rebuilt an unfinished, roughed-in cabin. Father testified that David agreed to pay for the improvements, but David denies such a statement.

It is significant that in the court's Amended Judgment it made a finding "that David Rackley [David] did not solicit his father's labor or materials to improve the cabin." Further, the trial court held that "the Plaintiff [Father] was a volunteer and it is a maximum [sic] of equity that it will not come to the aid of a pure volunteer." The trial court, nevertheless, found that David "stood by without any written objection or legal action to prevent [Father] from expending monies on materials to repair the cabin which he later got a value for when he sold the cabin. . . ."

The United States Supreme Court in *Sutton v. United States,* 256 U.S. 575, 580, 41 S.Ct. 563, 565, 65 L.Ed. 1099 (1921) stated in dictum that:

> Whenever a structure is permanently affixed to real property belonging to an individual, without his consent or request, he cannot be held responsible because of its subsequent use. It becomes his by being annexed to the soil; and he is not obliged to remove it to escape liability. He is not deemed to have accepted it so as to incur an obligation to pay for it....

"Quantum meruit is a remedy for the enforcement of a quasi-contractual obligation and is generally based on the principle of unjust enrichment." *Davis v. Nelson,* 880 S.W.2d 658, 664 (Mo.App.1994). "However, 'when a party voluntarily does an act or renders service and there is no intention at the time that he should charge therefore or understanding that the other should pay, he will not be permitted to recover, for that which was originally intended as a gratuity cannot subsequently be turned into a charge.'" *Id.* at 664 (quoting *Lewis v. Thompson,* 231 Mo.App. 321, 96 S.W.2d 938, 942 (1936)).

Appellant David Rackley and Jeri C. Rackley's point on appeal is well-taken.

The Amended Judgment is reversed, in part, as follows: that part of the Amended Judgment imposing a constructive trust on a parcel of land and home thereon, located in Alton, Oregon County, Missouri, is reversed. That part of the Amended Judgment awarding Respondent John Rackley the amount of $5,516.55, arising from a quantum meruit claim for materials and improvements to real property, located in Oregon County, Missouri, owned by Appellants David Rackley and Jeri C. Rackley is reversed. In all other respects the Amended Judgment is affirmed.