J. Theresa BROOKS a/k/a J. Theresa Kunz, Appellant,

v.

Douglas O. KUNZ, Respondent.

No. 44340.

Missouri Court of Appeals,
Eastern District,
Division Three.

May 25, 1982.

Motion for Rehearing and/or Transfer Denied July 16, 1982.

Application to Transfer Denied Sept. 13, 1982.

John W. Reid, II, Fredericktown, for appellant.

Ralph M. Friederich, St. Louis, for respondent.

REINHARD, Presiding Judge.

This is the second appeal of this case. *See, Brooks v. Kunz*, 597 S.W.2d 183 (Mo. App.1980). Plaintiff's original petition was in three counts. In Count I, plaintiff requested the court to quiet title to a 101 acre farm in St. Francois County in her and defendant as tenants in common; in Count II, she requested partition and sale of the farm; and in Count III, she requested relief for matters unrelated to this appeal.

At the conclusion of the first trial, the trial judge granted plaintiff's request and quieted title to the farm in her and defendant as tenants in common, finding that each owned an undivided one-half interest, ordered a sale of the farm and division of the proceeds. The land was sold for $64,000.00. $3,530.00 was allowed for attorney's fees, based upon a graduated fee schedule.

Plaintiff and defendant had taken title to the farm as husband and wife, even though they were never married. In the first appeal, we held, citing *Anderson v. Stacker*, 317 S.W.2d 417, 421 (Mo.1958) that:

"A conveyance to grantees as husband and wife, although the parties were knowingly living in meretricious relations, will, . . . ordinarily be construed to create a tenancy in common, and the property so conveyed will be apportioned, in the partition or similar proceedings, on that basis, the apportionment being . . . according . . . to the proportionate contribution of each of the grantees toward the acquisition of the property."

*Brooks*, 597 S.W.2d at 187.

We found plaintiff had an interest in the property entitling her to partition but reversed the case because the exact amount of plaintiff's contribution was not shown. The case was "remanded for a new trial at which evidence of the respective contributions of the parties to the acquisition of the

farm property should be adduced." 597 S.W.2d at 187. We also reversed the court's order as to the allowance for attorney's fees because it was based solely upon a fee schedule.

On remand, over defendant's objection, plaintiff amended her petition to allege an implied contract to share property between her and the defendant, relying upon *Marvin v. Marvin*, 18 Cal.3d 660, 134 Cal.Rptr. 815, 557 P.2d 106 (1976).[1]

A different judge heard the case on remand. At the conclusion of the second trial, the court filed findings of fact and conclusions of law and found: 1) the defendant "contributed the entire amount of the acquisition of . . . the St. Francois property . . . ."; 2) any household services rendered by the plaintiff "were gratuitous because such services were rendered in a family relationship";[2] (3) there was no express or implied contract between the parties as to division of the disputed property.

The court thereupon decreed that the entire amount of the proceeds from the partition sale belonged to defendant, allowed an offset to plaintiff of $6,180.00 for past due child support[3] and awarded plaintiff's attorney $1,300.00 as and for reasonable attorney's fees. From this decree, plaintiff appeals.

■ In her first point, plaintiff alleges the trial court erred in not finding an implied contract to divide the property. We think this issue was improperly before the court.

■ Whenever an appellate court reverses and remands the judgment of a trial court, the appellate court does so with directions which are determined from the mandate and opinion of the appellate court. *Abrams v. Scott*, 357 Mo. 937, 211 S.W.2d 718, 721 (1948). In our opinion, we stated

---

1. In *Marvin v. Marvin*, the California Supreme Court held that the courts could enforce express or implied contracts between non-marital partners to share equally all property accumulated by either or both of them.

2. In the first appeal, relying on *Anderson v. Stacker*, 317 S.W.2d 417 (Mo.1958), we observed that performance of services could constitute a contribution towards the acquisition of the property depending on their value and the manner in which they were performed.

3. There has been no challenge to the amount of child support and its award in this case.

this case was "remanded for a new trial at which evidence of the respective contributions of the parties to the acquisition of the farm property should be adduced." The jurisdiction of the circuit court, upon a retrial of the case was limited solely to this issue. *State ex rel. Dolman v. Dickey*, 288 Mo. 92, 231 S.W. 582, 584 (1921).

The injection of the issue of an implied contract into the case by plaintiff is outside the scope of our direction to the trial court contained in our mandate. Failure of the trial court to find for the plaintiff on this issue cannot, therefore, be error.

In her second point, plaintiff asserts the trial court erred because there is a presumption that each co-tenant has an equal interest in the property.

■ Unfortunately, we were confronted with this precise issue in the first appeal and determined that we were bound by the Supreme Court's ruling in *Anderson v. Stacker*, 317 S.W.2d 417 (Mo.1958). The decision of an appellate court is the law of the case on all points presented and decided and remains as such throughout all subsequent proceedings both in the trial and the appellate courts and no question decided in the first appeal will be considered in the second. *Feinstein v. McGuire*, 312 S.W.2d 20, 23 (Mo.1958). This point must be ruled against plaintiff.[4]

■ The trial judge found that the defendant contributed the entire amount to the acquisition of the farm. We disagree. While, there is no evidence that plaintiff contributed any cash and scant evidence of compensable services towards the purchase of the property, her execution of the note and deed of trust at the time of the pur-

chase did constitute a contribution towards the acquisition of the property entitling her to a proportion of the sale proceeds.

The evidence established that in November, 1971, the 101 acre farm in St. Francois County was purchased for a total price of $17,500.00. Defendant made a down payment of $10,000.00. By general warranty deed, the parties took title to the property as husband and wife.

Both parties executed a note and deed of trust for the remainder of the purchase price in the amount of $7,500.00. Subsequently, defendant paid off the note. He also constructed two houses on the property with his own money. The court found that although plaintiff performed services for defendant, they were gratuitous because rendered in a family relationship. *Brassfield v. Allwood*, 557 S.W.2d 674, 681 (Mo. App.1977). Plaintiff does not challenge this conclusion of the trial court.

In *Atkinson v. Dasher*, 588 S.W.2d 215 (Mo.App.1979), the parties jointly purchased real estate for $89,950.00 with the intention to marry. Dr. Dasher contributed $19,000.00, and his fiancee, Bonnie contributed $1,000.00 towards the down payment and both executed a note and deed of trust for $71,950.00. Nine months later, Bonnie died and a partition action was instituted. The court cited *Anderson v. Stacker* and also cited 86 C.J.S. Tenancy in Common, § 18, pp. 378–79 for the proposition that: "[I]t has been held that proof of the fact that at the time of purchase vendees contributed unequal sums in cash is not proof that they took or intended to take in that proportion, where such payment in cash was only part of the total consideration." 588 S.W.2d at 216–17.

---

4. The existence of the presumption would only have benefited the plaintiff on the first appeal, where there had been no evidence of contribution of the parties. The presumption plaintiff would have us adopt, contrary to *Anderson v. Stacker*, is of no benefit to her now that evidence of contribution has been adduced.

We did acknowledge in the first appeal though, that the presumption is supported by logic and fairness. 597 S.W.2d at 187. Our brethren in the Western District quoted our observation in *In re Estate of Kranitz*, 610 S.W.2d 300, 303

(Mo.App.1980). In 86 C.J.S. *Tenancy in Common*, § 18 (Supp.1981) the following is stated: "In at least one jurisdiction there is no presumption that the shares of two or more persons taking as tenants in common under an instrument which is silent in regard to their respective shares are equal but in such case apportionment is to be made according to the contribution of each. *Anderson v. Stacker*, 317 S.W.2d 417; *Keller v. Porchey*, 560 S.W.2d 257 (Mo.App.); *Brooks v. Kunz*, 597 S.W.2d 183."

The court apparently held that Bonnie had an "entitlement . . . [to] one-half of the net sale proceeds upon distribution after partition was made," but her one-half share should be reduced by contributions made by Dr. Dasher. 588 S.W.2d at 217.

The apparent source of the quotation above from C.J.S. is *Anderson v. Anderson,* 137 Kan. 833, 22 P.2d 471 (1933). In *Anderson,* title to disputed property was taken in the name of two brothers, James and Richard. At the time of the purchase, James paid $4,300.00 and Richard paid $2,200.00 towards the $13,000.00 purchase price. Both also executed a note and mortgage in the amount of $6,500.00. Subsequently, James paid the entire $6,500.00 note.

Fo⸗ the purpose of determining the interest each owned, the court expressly held that the execution of the mortgage constituted a contribution of $3,250.00 by each co-tenant towards the purchase price regardless of which co-tenant thereafter paid the mortgage. The court reasoned as follows:

> "[W]hy should interests be determined by the circumstance that one vendee paid more of the cash part of the consideration than the other. This land was not purchased for cash. One-half of the consideration was paid to vendor Martin by the joint note of James and Richard for $6,500 secured by their joint mortgage of the land. Under the law of this state, each maker of the note was severally liable for the full amount. By signing the note, Richard contributed just as much to $6,500 of the consideration as James contributed. If one subsequently paid the note or paid more than half the note, he might claim contribution from his comaker . . . ."

22 P.2d at 472.

In Missouri, both the plaintiff and the defendant here, were jointly and severally liable for the full amount of the $7,500.00 note. *Atkinson,* 588 S.W.2d at 216. If default had occurred, a judgment in the entire amount of the note could have been entered against the plaintiff above. We think the approach taken in *Anderson* is sound and not inconsistent with Missouri law.[5]

Where one co-tenant pays all of the cash towards the down payment, but both co-tenants jointly execute a note for part of the purchase price, there are at least two other ways to determine the interest each acquires.

First, their interests could be determined solely by the amount of cash paid at the time of purchase. Second, their interest could be determined by computing the total of the amount paid at the time of purchase and any amount paid to reduce the mortgage after the purchase.

Under the first method, a party who contributed no cash towards the purchase price but subsequently pays off part of the mortgage would have no interest in the property. Under the second method, as that same party pays off part of the mortgage, his ownership interest increases with each payment. The first method is unfair, while the second allows a constantly shifting ownership interest, or as the court in *Anderson* stated: "[we] cannot agree that, after land has been conveyed to A and B . . ., quantity of interest shall be determined by subsequent contributions made through a period of years . . . on presumptions bobbing up with each cash payment, causing agile interests to hop from one co-owner to the other." 22 P.2d at 472.

■ We think that logic and fairness requires the application of the *Anderson* approach and allow a credit to each co-tenant for one-half of the mortgage amount financed, but allow contribution if one co-tenant pays more than his proportionate share.

Using that analysis, we conclude that the defendant contributed $10,000.00 in cash

**5.** In *Anderson v. Stacker,* there was an allegation in the pleadings that both parties had jointly executed a note and deed of trust. The Supreme Court expressly noted in its opinion that the note and deed of trust were not admitted into evidence. Thus, the court did not express the effect to be given financing a purchase by joint execution of a note and deed of trust.

and $3,750.00 (½ of the mortgage) for a total of $13,750.00 or 78% towards the acquisition of the property. Plaintiff contributed $3,750.00 or 22% towards the acquisition of the property. Thus, plaintiff has a 22% interest in the proceeds of the sale and defendant has a 78% interest in the proceeds.

Inasmuch as defendant paid off the entire $7,500.00 note and we have allowed plaintiff one-half that amount towards determining her interest in the property, defendant is entitled to a charge of $3,750.00 against plaintiff's share of the proceeds.

■ Further, the trial court found that defendant expended $18,000.00 for improvements on the farm. It is settled in Missouri that the right to compensation for improvements without the consent of co-tenants is a legal right, but may be enforced in equity for payment out of partition when said improvements are made in good faith, are of a necessary and substantial nature, materially enhance the value of the property, and the circumstances show it would be equitable to do so. *Hartog v. Siegler*, 615 S.W.2d 632, 636 (Mo.App.1981); *Beckham v. Eggleston*, 341 S.W.2d 337, 341 (Mo.App. 1960). Here, we have been unable to determine from the record whether plaintiff consented to these improvements. Nonetheless, as they were made in good faith, are of a substantial nature which materially enhanced the value of the property, we conclude that defendant is entitled to reimbursement out of the partition proceeds for the $18,000.00 he expended.

In plaintiff's third point, she argues the court's allowance for attorney's fees was inadequate. Supreme Court Rule 96.30 states that the trial court shall allow a reasonable fee to the attorney bringing a partition suit. After the first trial, the trial judge allowed $3,530.00 for attorney's fees based upon a sliding percentage. We reversed and remanded because it was error to base a fee award *solely* on a fee schedule and there was no other evidence in the record to support the award. On remand,

the trial court allowed $1,300.00 for attorney's fees.

Subsequent to our opinion in this case, the Supreme Court in *Nelson v. Hotchkiss*, 601 S.W.2d 14 (Mo.banc 1980) affirmed an award of $2,250.00 for attorney's fees on a partition sale of $25,000.00. There, for the first time, the court recognized the principle in partition actions that the trial court which tries a partition action may establish the amount of attorney's fees without the aid of evidence:

In the absence of a contrary showing, the trial court is presumed to know "the character of the services rendered in duration, zeal, and ability. [The trial court] presumptively knew the value of them according to custom, place, and circumstance." *Munday* [*v. Thielecke*, Mo.] 290 S.W.2d [88] at 92; *Donaldson v. Allen*, 213 Mo. 293, 111 S.W. 1128, 1129 (1908). The trial court is considered to be an expert on the question of attorney fees; the court that "tries a case and is acquainted with all the issues involved may 'fix the amount of attorneys' fees without the aid of evidence.'" *Sebree v. Rosen*, 393 S.W.2d 590, 599 (Mo.1965); *Agnew v. Johnson*, 352 Mo. 222, 176 S.W.2d 489, 493–94 (1943) ... The burden was on appellant to affirmatively establish that the compensation allowed the respondent was a clear or manifest abuse of ... discretion.

601 S.W.2d at 21.

In the normal case, the trial court that tries a partition case and is acquainted with all of the issues involved therein fixes the attorney's fees. Here, after remand, a different judge awarded attorney's fees.

■ It is apparent the second trial judge was influenced by the fact that we had earlier reversed a $3,530.00 fee and that he had determined plaintiff had no interest in the real estate.[6] In our initial opinion though, we did not state that the $3,530.00 fee was unreasonable, only that the method of computation was erroneous. Further,

6. Normally, where it is determined plaintiff has no interest in the realty, a fee allowance may

not be made to his attorney. *Arthaud v. McFerrin*, 156 S.W.2d 641, 642 (Mo.1941).

we have resolved in this appeal that plaintiff does in fact have an interest in the proceeds.

In support of the adequacy of the attorney's fee award, defendant relies on the established principle, which we recited in the first appeal, that "attorneys fees are to be no greater in amount than fees which would result for a noncontested action even though the action may be contested." 597 S.W.2d at 189.

This is one of the most misunderstood statements in the law. It appears to us that what the courts mean is that if the plaintiff requests special benefits in addition to partition of the real estate, the defendant should not be required to pay plaintiff's attorney for the services rendered for those special benefits. There are instances though where a partition suit can be contested, yet plaintiff requests no special benefits and the plaintiff's attorney is allowed compensation for the additional work. In the words of Judge Westhues, "[Defendant] wanted to fight and his wishes were carried out. The time has come to pay the fiddler. [Defendant] has listened to the music he ordered and should not ... complain about paying the bill. *Munday v. Thielecke*, 290 S.W.2d 88, 92 (Mo.1956).

The plaintiff's attorney in a partition action is in a unique position as he must represent two separate interests. Initially, it is his duty to prove his client's interest in the property. After that, all other services he renders are for the benefit of all parties. This is the reason the law allows a payment to the plaintiff's attorney to be made out of the common fund. *Arthaud v. McFerrin*, 156 S.W.2d 641, 642 (Mo.1941). Among the duties the plaintiff's attorney should perform are ensuring that a purchaser acquires good title. This will ordinarily include an examination of the abstract, correction of any defects, and possibly, as here, a count to quiet title. From the time the order of partition is entered, the services rendered are for the common good. These services include preparation of orders of court, assistance to the sheriff or special commissioner in the preparation of notices, adver-

tising the sale, ensuring potential buyers for the sale, preparation of necessary documents including deeds and documents for the sheriff or special commissioner after the sale, and disbursal of the sale proceeds.

Among the elements to be considered in setting an attorney's fee are the amount and character of legal services rendered; the nature and importance of the litigation, the degree of responsibility imposed or incurred by the attorney, and the degree of professional ability, skill and experience called for and exercised. *Brown v. Brown*, 495 S.W.2d 89, 93 (Mo.App.1973). But, in our opinion, the *prime* and most *significant* factor to be considered is the sale price. After partition has been ordered, all parties are interested in the property bringing the highest price. If price is the prime factor, then it provides an incentive to the plaintiff's attorney in the same manner as it does to a real estate agent.

In *Brown v. Brown*, 495 S.W.2d 89 (Mo. App.1973), the Western District affirmed an attorney's fee of $8,800.00 or 5% of the sale price in a partition action where the real estate brought $176,000.00. Judge Somerville speaking for the court stated:

[T]he record discloses that plaintiff's counsel performed substantial and important legal services, no aspect of the partition suit was neglected or indifferently handled, land of the value of $176,000.00 was involved, and high standards of professional conduct were exhibited throughout by plaintiff's counsel, particularly with respect to his research as to the nature and extent of the parties' title to the land and in securing and counseling the special commissioner. It is a matter of common knowledge, and this court takes judicial notice, that the standard real estate commission in Carroll County, at the time in question, pertaining to the sale of farm lands was five percent of the total sales price. The awarded fee of $8,800.00 thus represented an acceptable amount according to existing public standards of value.

495 S.W.2d at 93.

Where ownership of land resides in multiple parties, the parties have three options in

the disposition of that property: a private sale wherein no expense is incurred other than those of a usual real estate sale; a sale through a real estate agent, wherein the real estate commission is well established; or the statutory method of partition provided by law.

Under the first two methods, the costs are well-known. It is time the circuit judges, the bar and the public of this state know in advance, *generally*, the fee to be allowed in a partition action. In the words of Judge Somerville, this arena has too long been "shrouded in an aura of mysticism and misunderstanding. There is nothing sacrosanct about attorney fees and their proper determination does not spring from professional or judicial prestidigitation." 495 S.W.2d at 91. We think the proper method of determining the fee gives prime consideration to the sale price of the land.

Plaintiff's attorney testified that approximately $15,000.00 had been incurred for all matters in this lawsuit. Further, he introduced into evidence Exhibit 26, his time sheet for this case. We acknowledge there were matters here which did not inure to defendant's benefit and were collateral to the partition proceeding of this farm, such as the matter of child support and the subject matter of count three of plaintiff's petition. Nonetheless, we have examined the record and conclude the trial court erred in its determination of the attorney's fees. We think $3,200.00 constitutes a reasonable attorney's fee under these circumstances and direct the trial court to enter that amount in favor of plaintiff's attorney as costs in this case.

We reverse and remand the case for the trial court to enter a judgment consistent with this opinion.

SNYDER and CRIST, JJ., concur.