**Robert E. PARKS, Appellant,**

v.

**Sharon E. RAPP, Respondent.**

**No. WD 50041.**

Missouri Court of Appeals,
Western District.

Sept. 26, 1995.

As Modified Oct. 31, 1995.

Harold L. Caskey, Butler, for appellant.

Ralph E. Smith, Butler, for respondent.

Before KENNEDY, P.J. and SMART and LAURA DENVIR STITH, JJ.

LAURA DENVIR STITH, Judge.

Partition of real property located in Bates and St. Clair counties was sought after Robert Parks and Sharon Rapp, owners of the property as joint tenants in common, were unable to agree on the division or disposition of the property. Mr. Parks appeals the dismissal of his suit brought in St. Clair County after transfer to Bates County and seeks to have the partition sale set aside because the Sheriff failed to comply with the trial court's order in collecting and distributing the proceeds of the partition sale and failed to close the sale within the time ordered. We decline to set aside the partition sale, but reverse and remand for a redetermination of attorney's fees.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On March 15, 1994, Mr. Parks filed separate suits in Bates County and St. Clair County, seeking, respectively, partition of 120 acres situated in Bates County and of 40 acres in St. Clair County. Both counties are in the same judicial circuit and both cases were assigned to the Honorable William J. Roberts.

Both tracts of land were owned by Mr. Parks and Mrs. Rapp as tenants in common. Mr. Parks lived in Jackson County, Missouri. He was the brother of Sharon Rapp. Sharon Rapp lived in Bates County with her husband, Clifford Rapp, and her son, Tim Rapp, at the time of the suit. Three days after suit was filed, Mrs. Rapp filed an answer to the Bates County action. She also filed a counterclaim in the Bates County action, seeking partition in the Bates County action of the adjoining 40 acres in St. Clair County which was already subject to the partition action filed in St. Clair County.

Mr. Parks sought dismissal of the Bates County counterclaim on the grounds that it was duplicative of his suit on file in St. Clair County. After a hearing, the trial court

overruled the motion to dismiss on the grounds that jurisdiction of the partition of the 40 acres located in St. Clair County was proper in Bates County rather than in St. Clair County because the Bates County and St. Clair County land are part of a single tract, the majority of which lies in Bates County, citing section 528.040, RSMo 1994.[1] In light of this ruling, the trial court transferred Mr. Parks' St. Clair County action concerning the 40 acres in St. Clair County to Bates County, consolidated the transferred action with the Bates County action, and then dismissed Mr. Parks' transferred petition to partition the 40 acres in St. Clair County on the basis that the relief sought was already requested in Mrs. Rapp's pending counterclaim in the Bates County action.

The parties to the Bates County suit agreed to the sale of the land and the court entered a Decree in Partition. This Decree found Mr. Parks and Mrs. Rapp to each be the owner of an undivided one-half interest in all of the property. The Decree also ordered the public sale of the property, as provided by law. The Decree stated that:

said property be sold at public sale to the highest bidder as provided by law **for cash** and the proceeds of said sale be apportioned among the parties as their interests may appear. THE COURT FURTHER ORDERS said sale be made by the Sheriff of Bates County, Missouri, as provided by law, that said report of partition be made to this Court and **pay over the proceeds of said sale as may be ordered by the Court.**

(emphasis added).

The Bates County Sheriff conducted the sale on June 17, 1994. Initially, each tract was offered individually. This resulted in bids of $60,000 for the 120–acre tract and $8,000 for the 40–acre tract, Mr. Parks being the high bidder for each tract. The tracts were then combined and offered as one unit. There were two bidders on the combined tracts. One was Mr. Parks, who stopped bidding at $93,500. The Sheriff testified that the other bidder was Mrs. Rapp's son Tim, who made the successful bid of $94,000. On

1. All statutory references are to RSMo 1994 un- less otherwise indicated.

cross-examination, the Sheriff said that, while he was sure there was only one Rapp bidder, it was possible that bidder was Clifford Rapp rather than Tim Rapp, he was not sure.

Despite the fact that only one of the Rapps actually bid on the property, and without explanation, the sale contract entered into right after the bidding stated that the purchasers of the property were Tim Rapp, Sharon Rapp and Clifford Rapp, as joint tenants with right of survivorship. The contract provided that Sharon, Tim and Clifford Rapp would pay ten percent ($9,400) in escrow and the balance of $84,600 at the closing on or about July 17, 1994. In addition, the contract was "subject to approval of the sale by the [C]ircuit Court of Bates County, Missouri." The contract stated that the sale, if not approved by the court, would be null and void and the purchaser's down payment refunded.

The Rapps paid the ten percent into escrow as required by their contract and the Sheriff's Report of Sale was filed with the court on July 14, 1994. The contract did not close as agreed on July 17, 1994, however. As a result, Mr. Parks filed a motion on August 8, 1994, to resell the property on the grounds that the contract had not closed as provided.

Mr. Parks' motion to resell was overruled. On August 27, 1994, the trial court approved the Sheriff's Report of Sale and confirmed the sale. In addition, the court ordered that, upon full payment of the sale price, to be made within ten days of its order, the Sheriff was to pay the expenses in the Report of Sale plus attorney's fees and expenses to the attorneys for both parties. The Sheriff was ordered to pay one-half of the remaining balance to Plaintiff and one-half to Defendant. Upon payment by the purchasers of the full balance of the purchase price, the Sheriff was ordered to execute and deliver to the purchasers the deed or deeds to the tracts purchased.

At this same hearing, the parties sought an award of attorney's fees in accordance with Rule 96.30 and section 528.530. Counsel disagreed "as to the amount of attorney fees that should be deducted and paid from the sale proceeds, and what amount each attorney should be entitled to in these cases."

The court requested that counsel each submit an itemization of time and expenses. While Plaintiff's counsel submitted an itemized statement of time and expenses, Defendant's counsel failed to do so. Stating that "[i]t simply would not be fair or just to deny Defendant's counsel's [sic] the value of services to both parties because he has not filed an itemization of his time and expense," the court ruled that "[t]he time attributed to those identifiable services will be that time the Court considers reasonable for the service, viewed within the context of Plaintiff's counsel's time expended on similar efforts." Based upon the records submitted by Mr. Parks' attorney, the court awarded Mr. Parks $1,420 in attorney's fees. Based upon time records created by the court for Mrs. Rapp's attorney, the court awarded attorney's fees in the amount of $1,340 to Mrs. Rapp.

Mr. Parks filed a second motion to resell the property on September 7, 1994. That motion noted that on September 6, 1994, which was the tenth day after the court's order approving the sale, the sale had failed to close as the court's order required. Also on September 7, 1994, while the motion to resell was pending, the sale did close. However, the Sheriff permitted the closing to occur based on payment by Tim, Clifford and Sharon Rapp, in their capacities as buyers, of only $39,608.60 rather than of the full $84,600.00 due under the contract and ordered paid by the court in its August, 1994 order. The Sheriff apparently did so because the Rapps convinced him that there was no point in requiring Tim, Clifford and Sharon Rapp to pay the portion of the sale price which would go to Sharon Rapp eventually, as Tim and Clifford were Sharon's son and husband. The Sheriff also accepted a small part of the portion of the purchase price which was paid in the form of a personal check rather than in the form of a draft. The Sheriff then executed a deed stating that the purchasers "have fully paid and satisfied to me the full amount of money by them bid."

Mr. Parks filed a motion to set the deed aside, alleging a defective sale based upon the Sheriff's failure to close on September 6, 1994, and upon his failure to collect the full purchase price at closing. After a hearing, the court overruled both motions filed by Mr. Parks and ordered the Sheriff to pay over the funds held by him to the parties.[2] This appeal followed.

## II. *MR. PARKS IS ENTITLED TO INTEREST BUT THE SALE WILL NOT BE SET ASIDE*

■ Partition is strictly statutory, and the Sheriff may only proceed in a manner authorized by statute or rule. *Hines v. Hines*, 624 S.W.2d 888, 889 (Mo.App.1981). Accordingly, the Sheriff must collect and disburse the purchase money according to the order of the court. Rule 96.24. The court shall direct the payment by the Sheriff of the costs and expenses of the proceedings and the remainder to the parties in interest. Rule 96.27. The Sheriff has no authority to vary these procedures. Nonetheless, it is also true that mere technical irregularities in proper procedure in conduct of the partition sale will not void the sale. Only irregularities which are substantial and which prejudice the parties will have that effect. *Koester v. Koester*, 543 S.W.2d 51, 54 (Mo.App. 1976).

Here, it is evident that there were a host of irregularities in the conduct of the sale and payment of the purchase price. First, the sale was on terms, as per the contract of sale, rather than cash, as advertised. However, both parties acquiesced. In addition, as discussed *supra*, the purchasers failed to close the sale on the date set by the contract. While the court then approved a new closing date, its order made clear that full payment must be made by the new closing date, stating:

> [u]pon full payment of the sale price, which is ordered to be done within ten days of this order, the Sheriff is directed to pay the expenses ... plus attorney fees and expenses.... The then remaining

balance held by the Sheriff shall be paid one-half to Plaintiff, and one-half to Defendant.

> Upon payment by the purchasers of the full balance of the purchase price, the Sheriff shall execute and deliver to them their deed or deeds to the tracts they have purchased.

(emphasis added). The purchasers nonetheless failed to pay the remainder of the purchase price on the tenth day after the order and paid nothing more until Mr. Parks filed a motion to set aside the sale.

Second, despite the Court's extensions of the closing date, on that date the three buyers—Sharon Rapp, her husband Clifford Rapp and her son Tim Rapp—paid only the half of the remainder of the purchase price owing to Mr. Parks. They did not pay Sharon Rapp the half of the purchase price owing to her, although the Court's order required the Sheriff to collect the full balance of the purchase price, and permitted distribution of the property only once that was accomplished and the expenses and attorneys' fees were paid. In addition, the deed was not to be executed and delivered to the purchasers until the full balance of the purchase price was paid. Nonetheless, the Sheriff distributed the property and closed the sale, and the trial court refused to set it aside.

The issue which this Court must resolve is whether the above irregularities were *substantial* deviations from the court's order, and if so, whether they were so prejudicial as to require the sale to be set aside.

■ Mr. Parks says the delay in the closing of the sale was substantial and prejudicial because it meant that the purchaser had the use of the sale price for two months after the sale date, and further that by the time of the closing in September the growing crops on the land had matured and were ready for harvest, making them more valuable. Yet, he says, he has not received interest on his half of the proceeds from the sale or the use of his portion of the proceeds, nor has he

2. In order to perfect this appeal, the funds paid over to Mr. Parks were tendered to and are being

held by the Circuit Clerk of Bates County.

received any additional funds to cover the value of the almost matured crop.

We agree that Mr. Parks was injured by the failure to timely close the sale on July 17, 1994. However, we do not need to set aside the sale in order to remedy this prejudice. We simply order that on remand the buyers be ordered to pay to Mr. Parks interest on his portion of the sale price from July 17, 1994 (the date the sale should have closed) until September 7, 1994 (the date the sale in fact closed and Mr. Parks' money was paid to the Sheriff).

■ We do not believe that Mr. Parks is also entitled to some part of the value of the crops grown on the land between the sale date and the actual closing date, however. Mr. Parks admits that if the sale had closed on July 17, 1994 as scheduled the crops would have gone with the land. We have already recompensed him for the delay by awarding interest. To also award the increased value of the crops over the interim period would give him a double recovery.

■ Mr. Parks also claims that the fact the three purchasers—Sharon, Clifford, and Tim Rapp—were not required to pay to the Sheriff the portion of the purchase price which was to go to Sharon Rapp in her capacity as seller was also a substantial and prejudicial deviation.

Just how Mr. Parks would be prejudiced about these irregularities is not immediately evident. Mr. Parks did not present proof that the land was sold at less than a legally adequate price, or that the Rapps knew that they would not be required to pay the full purchase price at the time of the bidding, while he thought he would have to do so. Had such been the case, Mr. Parks would clearly have shown a substantial irregularity and prejudice, for the Rapps should not have the benefit of secret knowledge that the sale will close in a manner different than that announced at the sale itself. So far as the record shows, the parties were on equal footing at the time of the sale itself.

To the contrary, the irregularities arose later, when the Sheriff first permitted the Rapps to close the sale after the court-ordered date, and then permitted them to pay only the portion of the proceeds owing to Mr. Parks. The most obvious person to claim injury from the failure is the other seller, Sharon Rapp, as she is the one who did not receive the monies to which she was entitled. Yet, she does not complain, has not sought to intervene in this action, and, so far as the records shows, is perfectly satisfied with the way the sale was effected.

The likely reason for her apparent satisfaction is evident. She is herself one of the purchasers, and the other two purchasers are her husband and her son. Her counsel suggests that she felt it would be pointless to pay money in her capacity as buyer to herself in her capacity as seller, and that it would be similarly pointless to require her husband and son to do so.

Mr. Parks, on the other hand, did receive his full portion of the sale price, and we have above held that he will on remand be entitled to an award of interest also. Thus, he will fully receive the amount he was entitled to under the sale. Mr. Parks' counsel nonetheless claims that Mr. Parks was prejudiced by the fact that he refrained from bidding any higher than his second place bid of $93,500, because, according to the terms of the sale, he would have had to pay the full purchase price to the Sheriff within 30 days. He states that Mr. Parks "feared he might not be able to come up with $94,000 within the 30 days."

There is no evidence in the record, however, that Mr. Parks intended to bid higher but was unable to obtain more credit. To the contrary, he, like the Rapps, would be paying half of the sale price to himself; it is therefore unclear why a bank would have refused to lend him additional money for the few necessary days the Sheriff would hold it before paying it back to him in his capacity as seller. Moreover, there is no claim that the sale price was not adequate, nor that it was artificially inflated so as to make its price too high for Mr. Parks to meet.

Finally, if there were a resale, it would be on the same terms as the original sale. That is, one would bid only the amount one could pay at closing, and the Sheriff would, this time, we presume, act in accordance with his

duty and not accept less than the full sale price. What would be the purpose of making the parties go through this process again? There is no evidence that this time Mr. Parks will be able to bid more, nor is there any evidence that the Rapps would bid less because they will be unable to pay or borrow the remainder of the sale price. A resale is simply too strong a remedy for the irregularities here noted.

We in no way approve of the Sheriff's delay in closing the sale, nor do we approve of the fact that the purchasers were permitted to pay less than the full purchase price. Were there any evidence that the sale was affected by the irregularities, or that the Rapps could not have closed the sale upon the agreed upon terms if the Sheriff had insisted on them, or that the Rapps gained some other undue benefit from the irregularities noted, we would not hesitate to set aside the sale. Nor do we have any reason to conclude, from our review of the record, that the land in question had such unique sentimental value to Mr. Parks that we can be sure that, upon a resale, his sole objective would be to obtain the land, even at a highly inflated cost. The land is apparently crop land. On these facts, we do not believe that a new sale is required.

### III. DISMISSAL OF ST. CLAIR COUNTY ACTION WAS ERROR

Mr. Parks also claims that the action he filed in St. Clair County was improperly dismissed after it was transferred and consolidated with the action in Bates County, and that the trial court improperly proceeded on Mrs. Rapp's counterclaim for partition, rather than on his petition, as to the St. Clair County property.

The filing of a partition claim is governed by section 528.040. That section states that a petition seeking the partition of land that lies in two or more counties must be filed in the county in which any portion of the land is located and a majority of the parties reside.

If a majority of the parties do not reside in any such county, or if all of them are nonresidents of the state, the partition action must be brought in the county in which an equal or greater part of the land is located.

The trial court, believing section 528.040 to be applicable, held that the partition action for the land located in St. Clair County should have been brought in Bates County because that is where both parties reside and the larger tract of land is located. It therefore denied Mr. Parks' Motion to Dismiss Mrs. Rapp's counterclaim (filed in the Bates County action) for partition of the 40 acres located in St. Clair County, transferred Mr. Parks' St. Clair County action pending on the same property to Bates County, and ultimately dismissed the latter claim on the basis that the relief sought was already requested in Mrs. Rapp's counterclaim.

 We hold that the trial court erred in so ordering. The law is settled that, in partition cases, the petition first filed has priority over subsequent suits seeking partition of the same property. *Applegate v. Brown*, 344 S.W.2d 13, 17 (Mo.1961). Mrs. Rapp argues that her counterclaim should be considered the first filed petition as to the St. Clair County land, because Mr. Parks' action was filed in the wrong venue and was ultimately dismissed.

However, the error, if any,[3] in filing suit as to the St. Clair County land in St. Clair County rather than in Bates County would result in Mrs. Rapp's counterclaim being considered the first-filed petition only if the prior-in-time St. Clair County suit were considered void due to being filed in an improper venue. Since the enactment of section 476.410, however, it has been clear that improper venue is not a jurisdictional defect and that the remedy for filing in an improper venue is transfer, not dismissal. *State ex rel. DePaul Health Ctr. v. Mummert*, 870 S.W.2d 820, 822–823 (Mo. banc 1994). And, indeed, the St. Clair County suit was not dismissed for lack of jurisdiction, but rather was trans-

---

**3.** Section 528.040 applies to actions where the land included in the suit lies in more than one county. As the parties each assume it applies to this case, we do not reach and do not intimate any opinion, as to whether section 528.040 applies to a situation such as this, in which the suit filed by Mr. Parks in Bates County only sought partition of land located in Bates County, not land that lies in two or more counties and, likewise, the action he filed in St. Clair County only sought partition of land located in St. Clair County.

ferred to Bates County and consolidated with the pending suit over the contiguous Bates County land. Thus, the suit filed by Mr. Parks in St. Clair County had priority over the counterclaim filed by Mrs. Rapp in the Bates County action. The Bates County suit should have proceeded on the transferred St. Clair County claim as it was filed prior to Mrs. Rapp's counterclaim. The trial court therefore erred in dismissing the transferred claim on the basis that it was merely duplicative of Mrs. Rapp's counterclaim.

The significance of this point lies in the fact that, under Rule 96.30, in a partition action, the court shall allow a reasonable fee only to the attorney *instigating* the action in partition. *See also* § 528.530 ("reasonable fee to the attorney or attorneys bringing the suit"). No provision is made for the payment of attorney's fees incurred by the party responding to a partition action. *Id.*; Rule 96.30. *See also Buchanan v. Mitchell,* 873 S.W.2d 945, 947 (Mo.App.1994). Mrs. Rapp's attorney acknowledges that the reason she brought the counterclaim for the St. Clair County land in the Bates County action was so that she could receive fees for the partition action. The result is that Mrs. Rapp is not entitled to an award of attorney's fees as she was not the party instigating the action in either county.

## IV. *DETERMINATION OF AMOUNT OF ATTORNEY'S FEES*

■ Mr. Parks also raises an issue concerning how to determine the amount of attorney's fees awarded in a partition action. As the trial court recognized, such fees should be determined in accordance with the factors set out in *Ward v. Ward,* 640 S.W.2d 477, 478 (Mo.App.1982), including consideration of the amount and character of legal services rendered, the nature and importance of the litigation, the degree of responsibility imposed or incurred by the attorney, and the degree of professional ability, skill and experience called for and exercised. *See Brooks v. Kunz,* 637 S.W.2d 135, 141 (Mo.App.1982). As stated in *Brooks,* "the *prime* and most *significant* factor to be considered is the sale price." *Id.* (emphasis in original).

Because we have determined that counsel for Mrs. Rapp was not an instigator of the partition action and so was not entitled to an award of attorney's fees, we need not consider Mr. Parks' claim that defense counsel was awarded an undue amount of attorney's fees in light of the latter's failure to present time records to the court as he had been previously ordered by the court to do.

■ On remand, however, the trial court must redetermine the fees to which counsel for Mr. Parks is entitled for his work on the partition of the entire property. This must be done in light of the fact that counsel for Mr. Parks is entitled to a fee based on partition of the entire 200 acres, rather than merely on partition of the 160 acres located in Bates County. In determining the fee on remand, the trial court should not rely solely on the hours spent by counsel for plaintiff in preparing this case, but should also consider the sales price and all of the other relevant factors set out in *Brooks.*

For the reasons stated above, the case is reversed and remanded with directions to (1) award Mr. Parks interest on the terms noted above; (2) hold that counsel for Mrs. Rapp is not entitled to receive attorney's fees out of the partition proceeds because he did not instigate the partition of any of the land; and (3) recalculate attorney's fees to be awarded to counsel for Mr. Parks and order Ms. Rapp to pay her share of any additional attorney's fees awarded to counsel for Mr. Parks. In all other respects, the judgment below is affirmed.

All concur.