T— C— S—, a Minor, by her Next Friend, P— B—, Defendant.

No. 21243.

Missouri Court of Appeals, Southern District, Division One.

Oct. 23, 1997.

Henry S. Clapper, Monett, for defendant–appellant.

Michael Riehn, Cardin & Riehn, Cassville, for plaintiff–respondent.

CROW, Judge.

On April 21, 1993, R__ S__ ("Father") filed a three-count petition against P__ B__ ("Mother"). Count I, apparently brought under the Uniform Parentage Act, §§ 210.817–.852, RSMo Supp.1987, averred that T__ C__ S__ ("Child") was born to Mother on February 22, 1988, and that Child was sired by Father. Although the prayer of Count I appears incomplete, we glean from the petition in toto that the goal of Count I was a declaration by the trial court that Father is the father of Child.

Count II, also apparently brought under the Uniform Parentage Act (particularly

§ 210.841), prayed the trial court to grant Father "principle [sic] care and custody" of Child, subject to Mother's reasonable visitation rights, and to order Mother to pay reasonable child support.

Count III pled the parties had acquired property "titled in their joint name," and prayed the trial court to divide it.

Mother filed an answer admitting Child was sired by Father. The answer prayed the trial court to deny Father custody of Child, and to order Father to pay Mother child support and other sums. The answer further prayed the court to award the "jointly titled property" to Mother.

Several weeks later, it evidently occurred to Mother's lawyer[1] that in an action to determine the existence of a father and child relationship under the Uniform Parentage Act, § 210.830 requires that the child be made a party. Consequently, Mother filed a motion seeking leave to file a "Counter Petition." Mother's motion pointed out that Child was not made a party to the action by Father, and that no next friend had been appointed for Child, hence relief "cannot be granted . . . as the pleadings stand presently."

As we comprehend the record, the trial court thereafter appointed Mother as next friend for Child, and granted Mother leave to file the "Counter Petition."

In the "Counter Petition," Mother and Child prayed the trial court to declare that Father is Child's father; additionally, Mother sought custody of Child, child support from Father, and sundry relief regarding property acquired by Mother and Father.

Other pleadings were subsequently filed, and the action was punctuated by hearings which need not be recounted.

Trial ultimately began October 26, 1995, and extended through four additional nonconsecutive days, ending June 20, 1996. The transcript fills 1,340 pages.

The principal disputes were two: custody of Child and disposition of the sole tract of real estate owned by Father and Mother.

The trial court entered judgment which, as we fathom it, awards Father and Mother joint legal custody of Child as that term is defined in § 452.375.1(1), RSMo 1994. As to physical custody, the judgment provides:

"Mother's custody shall be from Friday at 3:00 p.m. to the following Wednesday at 3:00 p.m. every other week, and from Monday at 3:00 p.m. to Wednesday at 3:00 p.m. every other week, subject to Father's reasonable visitation as outlined in paragraph (d) Visitation.

Father shall have physical custody at all other times, subject to the parties' reasonable visitation as outlined in paragraph (d) Visitation."

According to our calculations, during any period of fourteen consecutive days, Mother and Father each have physical custody of Child half the time. The "Visitation" provided for in paragraph "(d)" of the custody plan grants Father physical custody of Child on designated days and grants Mother physical custody of Child on other designated days. It also grants each parent an uninterrupted two-week period of physical custody each summer. It appears to us that if Father and Mother obey the plan, each will have physical custody of Child the same amount of time.

The judgment directs that the real estate—a house and lot—be sold, and that the proceeds (after payment of certain specified obligations) be disbursed 70 percent to Mother and 30 percent to Father.

Mother appeals. The first of her two points relied on avers the trial court erred in awarding "joint custody" of Child to Father and Mother instead of awarding "primary custody" to Mother alone. Mother's second point attacks the order regarding the real estate.

On the custody issue, Mother made a herculean (and expensive[2]) effort to prove Fa-

---

**1.** The lawyer now representing Mother is her third lawyer. The lawyer now representing Father is his third lawyer.

**2.** Mother testified on the fourth day of trial that she had incurred $16,000 in attorney fees to her

second lawyer, after previously paying her first lawyer almost $3,000.

ther was unfit to be a custodian of Child. Mother's evidence, if fully believed by a trier of fact, would demonstrate Father is an individual to whom most, if not all, conscientious jurists would refuse to entrust the nurture of an eight-year-old child.

■ However, Mother did not request the trial court to make findings on any specified fact issues per Rule 73.01(a)(3).[3] The trial court made no findings of fact pertinent to its custody decision, hence all facts shall be considered as having been found in accordance with the result reached. *Id; Mustain v. Mustain,* 842 S.W.2d 574, 575[2] (Mo.App. S.D.1992).

■ Mother acknowledges that our review is governed by Rule 73.01(c) and *Murphy v. Carron,* 536 S.W.2d 30, 32[1] (Mo. banc 1976). The judgment of the trial court will be affirmed unless there is no substantial evidence to support it, unless it against the weight of evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Nix v. Nix,* 862 S.W.2d 948, 951[4] (Mo.App. S.D.1993). We give due regard to the trial court's opportunity to judge credibility of the witnesses, Rule 73.01(c)(2), mindful that a trial judge may believe all, part, or none of the testimony of any witness. *Herbert v. Harl,* 757 S.W.2d 585, 587[1] (Mo. banc 1988); *Nix,* 862 S.W.2d at 951[7].

Nonetheless, Mother reminds us that in a custody dispute—even one involving an out-of-wedlock child—the trial court's obligation is to render judgment considering the best interests of the child. *Division of Child Support Enforcement v. Estrada,* 916 S.W.2d 443, 447[5] (Mo.App. W.D.1996); *In re Paternity of D.A.B. by D.A.B.,* 902 S.W.2d 348, 355[4] (Mo.App. W.D.1995). Mother maintains the trial court's custody plan is against the weight of the evidence and adverse to the best interests of Child.

The trial court faced a vexing task in determining custody. Mother was married three times before she and father began their six-and-a-half-year cohabitation. All three marriages ended in divorce.

Mother has a daughter by her first marriage. At time of trial, that daughter was in her mid-twenties. There had been no contact between that daughter and Mother for over a year, even though both reside in southwest Missouri.

Mother has a daughter by her second marriage. That daughter left Mother's home at age seventeen—several months after Father's departure—and began cohabiting with her boyfriend.

■ Although the lack of a relationship between Mother and her eldest daughter, together with the early departure of Mother's second daughter from the home, may not demonstrate Mother would be an unsuitable custodian for Child, those circumstances were nonetheless before the trial court when it faced the custody issue.

We have already noted there was evidence adverse to Father regarding his fitness as a custodian. However, the record yields no clue as to how much of that evidence the trial court believed. Furthermore, we espy no evidence of mistreatment of Child by either Father or Mother.

The trial court interviewed Child on the record, in the presence of counsel and Child's guardian ad litem. Nothing Child said indicated she would be at risk with either parent.

In sum, the trial court had no attractive option in adjudicating custody. Having studied the ponderous record, we cannot condemn the trial court for imposing the joint physical custody scheme here, wherein each parent has physical custody no longer than five consecutive days (except for each parent's two-week period in the summer).

■ On appeal, it is presumed that the trial court reviewed all the evidence and awarded custody in light of the best interest of the child. *Burkhart v. Burkhart,* 876 S.W.2d 675, 678[6] (Mo.App. W.D.1994). This presumption is based on the trial court's better position to judge not only the credibility of the witnesses and parties directly, but also their sincerity, character, and other intangibles which may not be completely revealed by the record. *Id.* A trial court has

---

**3.** Rule references are to Missouri Rules of Civil Procedure (1996).

considerable discretion in adjudicating custody, and an appellate court should not disturb such adjudication unless firmly convinced it is manifestly erroneous and the welfare of the child requires some other disposition. *In re Marriage of Campbell*, 868 S.W.2d 148, 150[2] (Mo.App. S.D.1993).

Having assiduously ruminated the record, we find no abuse of discretion by the trial court in its adjudication of custody, and we are not firmly convinced that the welfare of Child requires a different disposition. We further find that no error of law appears in the trial court's custody determination, and that an opinion setting forth the epic evidence on that issue would have no precedential value. Accordingly, the portion of the judgment adjudicating custody of Child is affirmed in compliance with Rule 84.16(b).

We begin our consideration of Mother's second point with an account of the relevant facts found by the trial court. It found the real estate owned by Mother and Father was bought April 20, 1989, for $84,400; that Mother paid $34,400 of that sum from her own funds; and that Mother and Father signed a note for the remaining $50,000. Neither Mother nor Father challenges those findings.

After acquiring the property, Mother and Father resided there. Each contributed to the note payments and the cost of various improvements until Father departed some four years later.

Relying on *Brooks v. Kunz*, 637 S.W.2d 135 (Mo.App. E.D.1982), the trial court reasoned that Mother contributed $34,400 in cash and $25,000 (half the $50,000 note) for a total of $59,400, being 70 percent "toward the acquisition of the property." The trial court further reasoned that Father contributed $25,000 (half the $50,000 note), being 30 percent "toward the acquisition of the property." Consequently, the trial court held Mother has a 70 percent interest in the net proceeds of the sale, and Father has a 30 percent interest in them.

Mother's second point:

"The trial court erred in ordering the net proceeds of the sale of the jointly owned real property be awarded 70% to [Mother] and 30% to [Father] because said allocation over-compensates [Father] in that (1) the trial court's formula fails to provide that [Mother] should receive back the amount she paid as the down payment on the property prior to allocating the net proceeds of the sale between the parties and (2) the trial court's formula will result in [Father] receiving back as part of the net proceeds of the sale funds [Mother] paid as a down payment on the purchase of the property."

In support of the above point, Mother hypothesizes that if the net proceeds from the sale are $50,000—an optimistic premise considering the unpaid note and the anticipated expenses of sale (including an attorney fee for partition)—Mother would receive only $35,000, just slightly more than her original contribution, while Father would receive $15,000. Mother maintains, and we agree, that this would be a windfall for Father, as only he would benefit from the increase in "equity" resulting from the property's appreciation in value and the reduction of the indebtedness on the $50,000 note.

Neither Mother's brief nor Father's brief reveals the amount of the unpaid principal on the note at the time Father departed the property, and our search through the record for that figure has been futile.[4] Nonetheless, it is inferable that only a fraction of the principal had been paid at the time Father left, and that most of the money paid on the note during the time he and Mother cohabited on the property was applied to interest.

In *Brooks*, 637 S.W.2d 135, relied on by the trial court, a man and a woman took title to a farm as husband and wife, even though they were unmarried. *Id.* at 137. The purchase price, $17,500, was paid by $10,000 cash from the man and a $7,500 note signed by him and the woman. *Id.* at 138. In those respects, *Brooks* is analogous to the instant case. However, in *Brooks* the man subsequently paid the note in full. *Id.* He also

---

4. The figure may have appeared on one or more exhibits at trial; however, nobody filed any exhibit with us.

built two houses on the tract with his own money. *Id.* The tract was ultimately sold for $64,000. *Id.* at 137.

The Eastern District of this Court held the net proceeds of the sale should be apportioned by a formula in which the man's contribution toward acquisition of the property was calculated at $13,750 (his $10,000 cash payment and half the $7,500 note), and the woman's contribution was calculated at $3,750 (half the $7,500 note). *Id.* at 139–40[5]. Applying that formula, the Eastern District held the man had a 78 percent interest in the sale proceeds, and the woman had a 22 percent interest in them. *Id.* However, because the man paid off the $7,500 note by himself, the Eastern District held he was "entitled to a charge of $3,750.00 against [the woman's] share of the proceeds." *Id.* Additionally, because the man built the houses with his own money, he was "entitled to reimbursement out of the partition proceeds for the $18,000.00 he expended."[5] *Id.* at 140.

While the method in *Brooks* may have produced a just result there, it will not do so here. One reason is that here, unlike *Brooks,* the note signed by Mother and Father has not been paid. Therefore, any notion that Mother and Father each contributed half the amount of the note toward purchase of the property is an illusion. Indeed, Mother and Father agree that during the time they cohabited on the property, the payments on the note totaled only $19,729.86. As observed earlier, it is inferable that only a fraction of that sum was applied against the $50,000 principal.

■ We therefore hold the trial court erred in deciding Mother should receive 70 percent of the net proceeds of the sale and Father should receive 30 percent. That part of the judgment must be reversed and the case must be remanded to the trial court for a redetermination of the respective interests of Mother and Father in the sale proceeds, as spelled out below.

■ Mother and Father agree that after they bought the property, they paid $4,682 to build a gazebo on it. We therefore find Mother's contribution to the acquisition of the property consists of: (a) the $34,400 down payment, (b) half the cost of the gazebo, $2,341, and (c) half the amount paid against the principal on the $50,000 note during the time she and Father cohabited on the property.[6] Father's contribution to the acquisition of the property consists of: (a) half the cost of the gazebo, $2,341, plus (b) half the amount paid against the principal on the $50,000 note during the time he resided on the property.

As observed earlier,[7] the amount of the unpaid principal at the time Father departed may appear on one or more exhibits received at trial. Consequently, on remand the trial court may not need additional evidence to ascertain that figure. However, if further evidence is necessary, the parties may provide it.

After calculating Mother's contribution and Father's contribution per the above instructions, the trial court shall total the contributions. The trial court shall then calculate the percentage of the total represented by Mother's contribution and the percentage of the total represented by Father's contribution. The trial court shall divide the net proceeds of the sale of the real estate according to those percentages.

The judgment is affirmed in all respects except the part determining the respective interests of Mother and Father in the proceeds of the sale of the real estate. That part of the judgment is reversed and the

---

5. We infer the Eastern District intended that this $18,000 be paid to the man from the sale proceeds before the formula was applied; however, whether that was the intent is unimportant in the instant case because, unlike *Brooks,* the improvements made by Mother and Father in the instant case were paid for by them jointly. Mother does not seek reimbursement separately for any improvement.

6. We do not enhance Mother's contribution by adding the amount paid against the principal after Father departed because, although Mother continued to make payments on the note, she also resided on the property, thereby avoiding expense for other housing.

7. Footnote 4, *supra.*

cause is remanded to the trial court for further proceedings consistent with this opinion.

Costs of this appeal are taxed half against Mother and half against Father.

GARRISON, P.J., and PREWITT, J., concur.